[No. 35399.   Department Two.   January 5, 1961.]

THE STATE OF WASHINGTON, *Respondent*, v. VERNA LEE
PETTY, *Appellant*.[1]

*Paul O. Manley*, for appellant.

*Hewitt A. Henry* and *Smith Troy*, for respondent.

ROSELLINI, J.—The defendant was found guilty of the crime of murder in the second degree, in the killing of her six-year-old daughter the night of July 26, 1956. On appeal, she assigns error to the court's refusing of a proposed instruction defining the crime of manslaughter and to its denial of her motion for a new trial. The motion was grounded on her contention that the requested instruction was erroneously refused.

We have uniformly held that every homicide, when proved beyond a reasonable doubt or admitted, is presumed

[1]Reported in 358 P. (2d) 136.

to be murder in the second degree; and the burden is upon the accused to reduce it to manslaughter or justify it. *State v. Turpin*, 158 Wash. 103, 290 Pac. 824, and cases cited therein.

It is also well established that a defendant cannot be convicted of a lesser degree of crime which is included in a greater degree unless evidence is adduced to sustain a conviction upon the lesser degree. On the other hand, the lesser degree of crime must be submitted to the jury together with the greater degree unless the evidence positively excludes any inference that the lesser crime was committed. *State v. Farley*, 48 Wn. (2d) 11, 290 P. (2d) 987; *State v. Scheeler*, 45 Wn. (2d) 661, 277 P. (2d) 341.

Shortly after three o'clock a. m. on July 27th, the defendant appeared at the home of one Robert Smith and told him that her daughter was missing. She asked that he return with her and help her search for the child. This he consented to do.

When they reached the third-floor apartment in which the defendant lived, Mr. Smith looked in the child's room and ascertained that she wasn't there. He then went through the rest of the house but found no trace of the child, and advised the defendant to notify the police, which she reluctantly consented to do. They went to the police station and reported the missing child. Officers, searching the house, found the child's bed in disarray and a pillow on the floor. A chemical analysis of some light stains on the pillow revealed that they were bloodstains.

Mr. Smith took the defendant to the home of some friends, where she rested until the following morning when the officers found the body of the child, wrapped in a chenille bedspread, in a clothes hamper in a bathroom on the vacant second floor of the house. A butcher knife was found on the floor of the hamper.

The defendant maintained for five days that she knew nothing of the circumstances of her daughter's death and disappearance. On August 1, 1956, she admitted to the Olympia police department that she had placed the child in the hamper. She stated that she had awakened at three

o'clock on the morning of July 27th, and had gone to her child's bedroom and found her dead on the floor; that she had wrapped her in a chenille bedspread, picked up a butcher knife in the kitchen, and carried the child down the stairs to the second floor where she placed the child head down in the clothes hamper, along with the butcher knife.

Post-mortem examinations of the child revealed that she had died of manual strangulation. Dr. Kenneth Partlow testified that, in his opinion, she died between ten p. m. on July 26, and one a. m. on July 27, 1956. Partly digested food was found in her stomach, and all the doctors agreed that this indicated that she died not later than four hours after eating. Frothy blood was found exuding from the nose, and the only doctor who testified concerning this fact stated that the child would have been dead once the blood appeared at the nose.

From this evidence, the jury could only conclude that the child was dead when she was taken from the bedroom. But the defendant contends that, inasmuch as one doctor stated that it would have been possible (though not probable) for the child to die of suffocation in the hamper if she was unconscious at the time she was placed in the hamper, the jury could infer that the death was due to the negligence of the mother in placing the child there while she was still alive, in which event she would have been guilty of manslaughter, and not murder in the second degree.

There was no evidence upon which such a finding could be based. In finding the defendant guilty, the jury must, of course, have rejected her story that the child was dead when she found her. There was no evidence upon which it could find that she was alive but unconscious when she was taken from the room. According to the uncontradicted medical testimony, the bloodstains on the pillow, unexplained if they did not come from the child's nose, indicated that she was dead before she was taken from the room. The post-mortem examinations revealed that the child had died several hours before three o'clock a. m., the hour at which the defendant said she found her on the floor. It is manifest, therefore, that the defendant failed to sustain the burden

of producing evidence which would justify a conviction of manslaughter, and the court did not err in refusing to instruct on the elements of this crime.

The judgment is affirmed.

WEAVER, C. J., HILL, FINLEY, and FOSTER, JJ., concur.

February 24, 1961. Petition for rehearing denied.