[No. 38309.   En Banc.   December 15, 1966.]

THE STATE OF WASHINGTON, *Respondent*, v. NEALY HARRIS, *Appellant*.*

*Reported in 421 P.2d 662.

*John D. Spellman*, for appellant.

*Charles O. Carroll* and *David W. Soukup*, for respondent.

HILL, J.—This is an appeal from a conviction of murder in the second degree and assault in the second degree before a court sitting without a jury.

The second-degree murder conviction was under RCW 9.48.040(2), constituting our felony murder statute as applied to second-degree murder; it provides:

> The killing of a human being, unless it is excusable or justifiable, is murder in the second degree when—
>
> (1) Committed with a design to effect the death of the person killed or of another, but without premeditation; or
>
> (2) When perpetrated by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a felony other than those enumerated in RCW 9.48.030. [robbery, rape, burglary, larceny or arson in the first degree]

The decisive issue on this phase of the case is the applicability of the felony-murder statute to the circumstances of this case.

Briefly, those circumstances are that Howard Williams, Hope Hall, Dorothy Jean Todd Hall (hereinafter referred to as Mrs. Hall), and Constance Smith were attempting to avoid the defendant. He interjected himself into the group, assaulting Constance Smith with his fists and knocking her to the ground. Her purse, containing a .22 caliber revolver, was knocked from her hands. The defendant secured possession of the revolver. One witness testified that defendant said, "I will kill all of you sons-of-bitches," and then fired one shot which mortally wounded Mrs. Hall. Another wit-

ness testified that defendant said "shoot" instead of "kill," and that the statement was made "sort of while it went off."

The trial court found that the defendant did not intend to kill Mrs. Hall, but that he did willfully assault her with a .22 caliber revolver, "a weapon likely to produce bodily harm" and that he "willfully and unlawfully shot at, toward, and into the body" of Mrs. Hall thereby "inflicting grievous bodily harm" upon her, and that she was mortally wounded and died as a result.

From these findings, the trial court, applying our statute (RCW 9.48.040(2)) which says that the killing of a human being (unless it is excusable or justifiable) is murder in the second degree

[w]hen perpetrated by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a felony other than those enumerated in RCW 9.48.030[1] [robbery, rape, burglary, larceny, or arson in the first degree],

concluded that the defendant—having been engaged in the commission of a felony, i.e., a willful assault "with a weapon or other instrument or thing likely to produce bodily harm" (RCW 9.11.020(4)),[2] was guilty of murder in the second degree (RCW 9.48.040(2)).[3]

---

[1]"The killing of a human being, unless it is excusable or justifiable, is murder in the first degree when committed either—

" . . . .

"(2) By an act imminently dangerous to others and evincing a depraved mind, regardless of human life, without a premeditated design to effect the death of any individual; or

"(3) Without design to effect death, by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a robbery, rape, burglary, larceny or arson in the first degree; or,

" . . . ." (RCW 9.48.030)

[2]"Every person who, under circumstances not amounting to assault in the first degree—

" . . . .

"(4) Shall wilfully assault another with a weapon or other instrument or thing likely to produce bodily harm; or

" . . . .

"Shall be guilty of assault in the second degree . . . ." (RCW 9.11.020)

[3]"The killing of a human being, unless it is excusable or justifiable,

This would seem to be an inescapable conclusion from the statute. The appellant, however, urges that our felony-murder statute should not apply to homicides when the precedent felony is an assault on the person killed,[4] and that we should adopt the New York "merger rule," which is that the precedent felony in a felony murder must constitute a crime not included in and independent of the homicide. (In this case, Mrs. Hall was assaulted on August 7, 1964, but did not die until September 7.)

This contention is supported by many New York cases. See 6 Fordham L. Rev. 43 (1937); 20 Cornell L.Q. 288 (1935).

The felony-murder doctrine comes to us through the common law.

As early as 1536, it was held that if a person was killed accidentally by one of the members of a band engaged in a felonious act, all could be found guilty of murder.[5]

It had its origin in an era when nearly all felonies were punishable by death.

It is pointed out that in later years numerous offenses which were once regarded as gross misdemeanors or misdemeanors have been made felonies by statutory enactment. We have also created by statute new offenses designated as felonies, many of which are malum prohibitum rather than malum in se. These changes, it is argued, make the felony-murder rule too harsh.

Our legislature, however, has not been unmindful of these changing circumstances and has made its own distinctions in the matter of homicides occurring while com-

---

is murder in the second degree when—

" . . . .

"(2) When perpetrated by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a felony other than those enumerated in RCW 9.48.030." (RCW 9.48.040)

[4]Ironically, it is agreed that had the defendant shot at Mrs. Hall and killed another member of the party, it would be a felony murder (second degree).

[5]The Felony Murder Doctrine and its application under the New York Statutes. 20 Cornell L.Q. 288, 289; Mansell & Herbert's Case, 2 Dyer 128b (1536).

mitting, attempting to commit, or in withdrawing from the scene of certain felonies. If the felony be robbery, rape, burglary, larceny or arson in the first degree, the killing, though without design to effect death, is murder in the first degree (RCW 9.48.030(3)). If the felony be other than the ones just named, the killing is murder in the second degree (RCW 9.48.040(2)).

A homicide not coming within the first and second-degree murder statutes,[6] and being neither excusable nor justifiable, is manslaughter (RCW 9.48.060).

The legislature has also specifically designated certain killings as manslaughter, i.e., killing unborn quick child (RCW 9.48.070-.080-.090); killing by a vicious animal (RCW 9.48.100); killing by overloading passenger vessel (RCW 9.48.110); killing by reckless operation of steamboat or engine (RCW 9.48.120); killing by intoxicated physician while treating a patient (RCW 9.48.130); killing as result of unlawful keeping of explosives (RCW 9.48.140). It has also added to our lexicon the crime of negligent homicide by means of a motor vehicle (RCW 46.61.520).

█ In light of the distinctions made in our own statutes, we see no reason why we should adopt the New York "merger rule," i.e., that the precedent felony, if an assault on the person killed, is merged in the resulting homicide. If we assume that such a merger has been desirable in New York, the answer is that Washington never has been confronted with the same reason for adopting the merger rule that has existed in New York.

In considering the situation in that state, we begin with the proposition that at common law a felonious assault resulting in death was murder. *Regina v. Welsh,* 11 Cox Crim. Cas. 336 (1869); *State v. Smith,* 2 Strobhart 77 (S.C. 1847); *Gore's Case,* 9 Coke 81a, p. 147 (1611). The applicable New York statute provides in part that:

The killing of a human being, unless it is excusable or

---

[6]These include RCW 9.48.030 (murder, first degree); RCW 9.48.040 (murder, second degree); and RCW 9.48.050 (killing in duel, which is also murder in second degree).

justifiable, is murder in the first degree, when committed:

1. . . . . .

2. . . . without a design to effect death, by a person engaged in the commission of, or in an attempt to commit a felony, . . . . (N.Y. Penal Law § 1044).

In practically all cases of homicide the victim's death results directly or indirectly from an assault by the perpetrator of the crime. Therefore, under New York law, every homicide which was not justifiable or excusable would amount to first-degree felony murder. Unless the "merger rule" distinction was recognized by the New York courts, all the second-degree murder and manslaughter statutes would have been emasculated. Hence, the New York courts hold that,

[T]he precedent felony must constitute an independent crime not included within the resulting homicide. (*People v. Wagner*, 245 N.Y. 143, 148, 156 N.E. 644, 646 (1927)

Furthermore, without the merger rule, under the New York law it would never be essential to show intent to kill, deliberation or premeditation, because every first-degree homicide could be charged under the felony-murder provision.

In Washington, the felony murder must occur in the commission of, an attempt to commit, or in withdrawing from the scene of a felony, and must *not* be separate, distinct, and independent from it. *State v. Diebold,* 152 Wash. 68, 277 Pac. 394 (1929). Our legislature further avoided the merger problem by specifically designating the felonies which result in a first or second-degree felony murder charge. Since an assault felony comes within the ambit of second-degree murder, the state must prove intent and premeditation in order to secure a first-degree murder conviction. Thus the rationale behind the New York merger rule is not applicable in Washington.

As pointed out in Thomas L. J. Corcoran's article "Felony Murder in New York," 6 Fordham L. Rev. 43 (1937), in a true felony murder the jury there is limited to first-degree murder or acquittal. He says:

Murder in the second degree and some cases of man-

slaughter in the first and second degrees involve felonious assault on the person killed and yet if these assaults were not held to be merged in the homicide they would all be murder in the first degree. (p. 48)

It is not surprising that he concluded: "It is manifest that the doctrine of felony murder is in need of some reformation in New York."

It may be that the doctrine is also in need of some reformation in Washington,[7] but clearly not by the court in this particular situation where we have a defendant with a revolver in his hand, threatening to "kill all of you sons-of-bitches," pointing the revolver at Mrs. Hall, pulling the trigger and inflicting a fatal wound.

Our view is that this defendant is very fortunate not to have been charged with first-degree murder committed

By an act imminently dangerous to others and evincing a depraved mind, regardless of human life, without a premeditated design to effect the death of any individual; . . . . (RCW 9.48.030(2))

We turn now to the appeal from the conviction of the second-degree assault. It is the defendant's contention that the evidence does not support the conviction.

In his original assault on Constance Smith, he knocked her purse containing the revolver from her hands and secured possession of the revolver, after which he fired one shot wounding Mrs. Hall. He then started to leave, followed by Constance Smith. We quote her testimony:

Q. What happened when you followed him back down the alley? A. I was asking him for the gun back. And, he looked at me and kept on walking, and he got to the gate, and I asked him, I said, "Give it back to me," and

---

[7]There is some suggestion that we should adopt the New York merger rule because of the horrendous possibility that some unfortunate hunter who accidentally shot and killed another person might be charged with second-degree murder. The possibility comes about in this way: Our second-degree-assault statute (RCW 9.11.020), heretofore discussed and quoted in part in footnote 2, sets forth 7 different ways of committing second-degree assault; and the seventh applies to every person who (without intent to kill a human being or commit a felony), "While hunting any game or other animals or birds, shall shoot another."

he says, "I am not going to give you nothing back," and he said, "Do you want to get shot?" Q. Did he point the gun at you? A. Yes, and then he says, "I am not going to give you nothing," putting it in his pocket. Q. Did you think he was going to shoot you? A. I didn't know. Q. Were you afraid? A. Yes, I was afraid, but I just figured if it was going to come, it was going to come. I just figured if he was going to shoot me I was going to get shot. Q. What were his exact words, do you recall those, when he pointed the gun at you? A. He asked me didn't I want him to shoot me. Q. And was there a charge while he was pointing the gun at you? A. Yes, and then he looked kind of funny and looked at the gun and stuck it back in his pocket and walked on through the gate back across the street, I guess.

The trial court properly concluded that this was sufficient to constitute a second-degree assault on Constance Smith. See *State v. Rush,* 14 Wn.2d 138, 127 P.2d 411 (1942); *State v. McFadden,* 42 Wash. 1, 84 Pac. 401 (1906); in the *Rush* case, *supra,* we said:

> The evidence adduced by the state sustains the verdict of the jury that appellant menaced the prosecuting witness with a dangerous weapon with the apparent present ability to inflict grievous bodily harm upon the prosecuting witness; hence, appellant is guilty of the crime of assault in the second degree. We held in *State v. Shaffer,* 120 Wash. 345, 207 Pac. 229, that one who menacingly pointed an apparently loaded revolver at another within range of that weapon was guilty of second degree assault "with a weapon . . . likely to produce bodily harm" within Rem. Rev. Stat., § 2414, subd. 4,[8] although the gun was not, in fact, loaded. (p. 140)

We also said:

> Whether there has been an assault in a particular case,

If the person shot dies in consequence thereof, second-degree assault being a felony, the hunter could be charged with second-degree felony murder. See footnote 3 for statutory definition of second-degree murder.

Such a charge has never been filed in the almost 60 years that we have had the same second-degree assault and second-degree felony murder statutes. If a change in the statutes is desirable, it should be made by the legislature and not accomplished by the court's adoption of the New York merger rule.

[8] Now (RCW 9.11.020(4)).

depends more on the apprehension created in the mind of the person assaulted than upon the undisclosed intention of the person committing the assault. (p. 140)

The judgments of conviction of second-degree murder and of second-degree assault are affirmed.

DONWORTH, FINLEY, WEAVER, HAMILTON, and HALE, JJ., and BARNETT, J. Pro Tem., concur.

HUNTER, J. (dissenting)—I dissent. The majority by its application of the felony murder statute, RCW 9.48.040(2), has now converted the crime of manslaughter where a homicide results from a hunting accident to the crime of second-degree murder. The defendant in such a case, even in the absence of malice or intent or design to effect death, would be subject to conviction for second-degree murder by operation of law.

Our felony murder statute, RCW 9.48.040(2), provides:

The killing of a human being, unless it is excusable or justifiable, is murder in the second degree when—

. . . .

(2) . . . perpetrated by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a felony other than those enumerated in RCW 9.48.030 [robbery, rape, burglary, larceny or arson in the first degree].

RCW 9.11.020(7) provides:

Every person who, under circumstances not amounting to assault in the first degree—

. . . .

(7) While hunting any game or other animals or birds, shall shoot another;

Shall be guilty of assault in the second degree.

To avoid a normal charge of manslaughter being converted into second-degree murder where a homicide results from a second-degree assault under section (7), *supra*, the second-degree assault must be construed to have merged in the homicide. A defendant would thereby be afforded the defense of lack of malice and intent to kill which would not be available under our felony murder statute if a second-

degree assault be considered a crime independent of a resulting homicide.

The merger rule is not novel. It has long been followed by the state of New York to avoid under their homicide statutes the incongruous situation of converting second-degree murder cases and in some instances manslaughter to first-degree murder. "Felony Murder in New York," 6 Fordham L. Rev. 43 (1937) states:

> Murder in the second degree and some cases of manslaughter in the first and second degrees involve felonious assault on the person killed and yet if these assaults were not held to be merged in the homicide they would all be murder in the first degree. (p. 48)

The reason for requiring the merger rule under the New York statutes, which is applicable in this state as related to our manslaughter and second-degree murder statutes, is clearly stated by Judge Cardozo in *People v. Moran*, 246 N.Y. 100, 158 N.E. 35 (1927):

> Homicide is murder in the first degree when perpetrated with a deliberate and premeditated design to kill, or, without such design, while engaged in the commission of a felony. To make the quality of the intent indifferent, it is not enough to show that the homicide was felonious, or that there was a felonious assault which culminated in homicide . . . . Such a holding would mean that every homicide, not justifiable or excusable, would occur in the commission of a felony, with the result that intent to kill and deliberation and premeditation would never be essential. . . . The felony that eliminates the quality of the intent must be one that is independent of the homicide and of the assault merged therein, as, *e.g.*, robbery or larceny or burglary or rape. . . .
>
> This killing was not done in circumstances excluding every possible hypothesis except one of homicide while engaged in another or independent felony. . . . If the defendant was trying to escape, then the first felony, the assault upon Daskiewicz, was over. A second felony had begun, a felonious assault on Byrns. The felony then begun was not independent of the homicide. It was the homicide itself.
>
> . . . In all this, there is a futile attempt to split into unrelated parts an indivisible transaction.

No violence can result to our second-degree murder statute, RCW 9.48.040(1), by applying the merger rule in the case of a second-degree assault resulting in death. Under the law of this state a person is presumed to intend the natural consequences of his voluntary acts. Second-degree murder is presumed in cases of a homicide. *State v. Petty,* 57 Wn.2d 513, 358 P.2d 136 (1961). If there is no evidence to rebut the presumption, a conviction for second-degree murder may be had under RCW 9.48.040(1). If, on the other hand, the defendant convinces the trier of fact that there was no design to effect death, then there can be no conviction for second-degree murder. It is not, therefore, necessary in a prosecution for second-degree murder that we permit a single act of homicide to be artificially divided into two felonies in order for the state to obtain a second-degree murder conviction.

It was the purpose of the legislature in enacting our felony murder statutes, RCW 9.48.030(3) and RCW 9.48.040(2), to accomplish the objective of supplying intent as a matter of law where a design to effect the death of the person killed cannot be presumed. This applies to those cases of separate felonies which are independent of the homicide itself.

The trial court improperly applied the felony murder statute, RCW 9.48.040(2), *supra,* in the instant case. The second-degree murder conviction should be reversed, and the cause remanded for a new trial with the application of the merger rule as stated in this dissent.

ROSELLINI, C. J., concurs with HUNTER, J.