STATE of South Dakota, Plaintiff
and Appellee,

v.

William O'BLASNEY, Defendant
and Appellant.

No. 12763.

Supreme Court of South Dakota.

Argued Feb. 22, 1980.

Decided Oct. 22, 1980.

Rodney C. Lefholz, Deputy State's Atty.,
Rapid City, for plaintiff and appellee;
Mark V. Meierhenry, Atty. Gen., Richard H.
Wendt, Asst. Atty. Gen., Pierre, on brief.

John J. Burnett, Pennington County Public Defender, Rapid City, Elliot Samuels, Chicago, Ill., for defendant and appellant.

WOLLMAN, Chief Justice.

Defendant appeals from the judgment of conviction on a jury verdict finding him guilty of first–degree manslaughter. We affirm.

The victim, defendant's four--month--old daughter, died on January 24, 1978, from a subdural hematoma resulting from injuries suffered while in defendant's care. Evidence was introduced from which the jury could have found that defendant intentionally dropped the infant to the floor of the bathroom after lifting her from the bathtub.

## I

### Felony Murder Charge

Defendant was charged with murder committed during the commission of the felony of child abuse. Defendant argues that the information failed to charge an offense of felony murder because the underlying felony, child abuse, merged into the homicide, rendering the felony murder doctrine inapplicable.

The felony murder rule arose as a doctrine of the common law. The rule was applied without regard to the dangerous nature of the felony involved or the likelihood that death might result from the felonious activity. W. LaFave & A. Scott, Handbook on Criminal Law § 71 (1972).

At the time the felony murder rule was originally established, all felonies were punishable by death. As the death penalty was eliminated for all but the most serious crimes, primarily murder, the felony murder rule was subjected to closer scrutiny. 2 Wharton's Criminal Law § 147 (14th ed. 1979).

In England the courts came to limit the felony–murder doctrine in one of two ways: (1) by requiring that the defendant's conduct in committing the felony involve an act of violence in carrying out a felony of violence, or (2) by requiring that the death be the natural and probable consequence of the defendant's conduct in committing the felony.

LaFave & Scott, supra, § 71 at 546 (footnotes omitted).

Although the felony murder doctrine was abolished in England in 1957, LaFave & Scott, supra, § 71 at 560, the rule still remains in force in the United States, though various limitations have been imposed upon it. These include: permitting only certain types of felonies to trigger the rule; strict interpretation of proximate or legal cause requirements; narrow construction of the time period in which a homicide may be found to be contemporaneous with the underlying felony; and requiring that the underlying felony be independent of the homicide. LaFave & Scott, supra, § 71; 2 Wharton's Criminal Law, supra, § 147.

■ Two principal rationales have been advanced for the continued application of the felony murder rule. Most courts have applied the rule for reasons of deterrence, the purpose being "to deter ... those crimes of a particularly heinous and brutal nature as well as those felonies necessarily involving great risk of death or serious bodily injury to the victim." *Williams v. State*, 542 P.2d 554, 586 (Okl.Cr.App. 1975). Thus, "[t]he purpose of the felony murder rule is to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit." *People v. Washington*, 62 Cal.2d 777, 44 Cal.Rptr. 442, 445, 402 P.2d 130, 133 (1965). Comment, *Merger and the California Felony–Murder Rule*, 20 U.C.L.A. L. Rev. 250, 258 (1972).

■ The second rationale underlying the felony murder rule is the transferred or constructive intent theory. According to this approach, "the purpose of the felony–murder rule is to relieve the state of the burden of proving premeditation or malice .... By proof of the perpetration of a separate felony, general malicious intent is transferred from that crime to the homicide, thus elevating the homicide to the crime of murder." 13 Gonz.L.Rev. 268, 271

(1977). "[The] underlying general felonious intent having been established, it is thus felt unnecessary to prove a specific mental state as to the homicide itself. Once it is established that a defendant has the requisite intent sufficient to establish guilt as to the underlying felony, the felony–murder rule then operates as a conclusive presumption that the defendant possessed the intent necessary for murder." *State v. Thompson*, 88 Wash.2d 13, 558 P.2d 202, 207 (1977) (Utter, J., dissenting). See also *State v. Clark*, 204 Kan. 38, 460 P.2d 586 (1969).

■ In order to mitigate the harshness imposed in certain instances by the application of the felony murder rule, the doctrine of merger developed. "The merger doctrine operates to bar application of the felony–murder rule whenever the underlying felony 'directly results in or is an integral element of the homicide.' Conversely, to support a felony–murder conviction, the elements of the underlying felony must be independent from those of the homicide so that the felony is not a constituent part of the homicide . . . . " Comment, *The Merger Doctrine as a Limitation on the Felony Murder Rule: A Balance of Criminal Law Principles*, 13 Wake Forest L. Rev. 369, 377 (1977) (footnotes omitted). As stated by Chief Judge Cardozo:

> To make the quality of the intent indifferent, it is not enough to show that the homicide was felonious . . . . The felony that eliminates the quality of the intent must be one that is independent of the homicide . . . .

*People v. Moran*, 246 N.Y. 100, 158 N.E. 35, 36 (1927). Thus, "a second degree felony · murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included *in fact* within the offense charged." *People v. Ireland*, 70 Cal.2d 522, 75 Cal.Rptr. 188, 450 P.2d 580, 590 (1969) (footnote omitted).

The courts are divided on the adoption of the merger doctrine. Among those jurisdictions following the merger rule are: Arizona (*State v. Essman*, 98 Ariz. 228, 403 P.2d 540 (1965)); California (*People v. Ireland*, supra); Kansas (*State v. Fisher*, 120 Kan. 226, 243 P. 291 (1926)); Missouri (*State v. Shock*, 68 Mo. 552 (1878)); New York (*People v. Moran*, supra); Oklahoma (*Tarter v. State*, 359 P.2d 596 (Okl.Cr.App. 1961)); and Oregon (*State v. Branch*, 244 Or. 97, 415 P.2d 766 (1966)).

States that have declined to adopt the merger doctrine include: Florida (*Robles v. State*, 188 So.2d 789 (Fla. 1966)); Georgia (*Baker v. State*, 236 Ga. 754, 225 S.E.2d 269 (1976)); Illinois (*People v. Viser*, 62 Ill.2d 568, 343 N.E.2d 903 (1975)); Texas (*Hilliard v. State*, 513 S.W.2d 28 (Tex.Cr.App. 1974)); and Washington (See Annot., 40 A.L.R.3d 1341 (1971); *State v. Harris*, 69 Wash.2d 928, 421 P.2d 662 (1966)).

The decision to adopt or reject the merger doctrine in a particular jurisdiction has resulted largely from an analysis of that jurisdiction's statutes. See *People v. Viser*, supra; *State v. Clark*, supra. Several courts adopted the rule in order to avoid the result that all homicides not justified or excused would become first ·degree murder under their statutes. *State v. Fisher*, supra; *People v. Moran*, supra; Note, *The Doctrine of Merger in Felony–Murder and Misdemeanor Manslaughter*, 35 St. John's L. Rev. 109 (1960 61). Courts that have declined to adopt the merger doctrine have tended to do so on the basis that it was not required by their particular statutory provisions. See *People v. Viser*, supra; *State v. Wanrow*, 91 Wash.2d 301, 588 P.2d 1320 (1978).

Furthermore, the merger rule has been most frequently adopted where the underlying felony was one of assault. See *State v. Essman*, supra; *People v. Ireland*, supra; *People v. Moran*, supra; and *State v. Branch*, supra. Additionally, not all instances of assault will trigger merger. "[The] inquiry cannot stop with the fact that death resulted from the use of a deadly weapon and, therefore, technically included an assault with a deadly weapon, but must extend to an investigation of the purpose of the conduct." *People v. Burton*, 6 Cal.3d 375, 491 P.2d 793, 801 (1971). See Comment, 20 U.C.L.A. L. Rev., supra, at 270–71.

At the time of the incident involved in this action, SDCL 22–16–9 provided: "Homicide is murder when perpetrated without any design to effect death by a person engaged in the commission of any felony."[1] Child abuse was at that time and still is a Class 6 felony.[2]

Defendant argues that his actions, although admittedly falling within the provisions of the child abuse statute, also constituted an assault that, as an integral part of the resulting homicide, defeats application of the felony murder statute. Defendant cites *Massie v. State*, 553 P.2d 186 (Okl.Cr. App. 1976), holding that the felony of child beating merges with a resultant homicide. As we have noted, however, Oklahoma is among those jurisdictions that have adopted the merger doctrine.

We decline to hold that the merger doctrine should be applied to the facts of this case. Rather, we find ourselves in agreement with what was said by the Supreme Court of Illinois in *People v. Viser*, supra:

> Our Criminal Code does not establish degrees of murder. And we are not concerned with whether the General Assembly, in establishing the offense of felony murder, intended to deter the criminal from the commission of rape, or robbery, or burglary, but not to deter him from the violent assault that accompanies each of those offenses. That kind of fragmentation of legislative purpose cannot survive the forthright characterization of aggravated battery as one of the forcible felonies that will trigger a charge of felony murder. What was intended was to deter the commission of any of the enumerated forcible felonies, including aggravated battery, by holding the perpe-

trator responsible for murder if death results.

343 N.E.2d at 909.

So also, our legislature has not established degrees of murder. Likewise, we do not presume to say that our legislature did not intend the felony of child abuse to be included within the reach of the deterrent effect of the felony murder statute that was in effect at the time the offense in question was committed. It may very well be that the sweep of that statute was, as a matter of legislative policy, too broad, as the recent amendments to the relevant statutes may indicate. Nevertheless, for us to impose a retroactive judicial limitation when there is no need to do so in order to prevent the nullification of other provisions of our homicide statutes would represent an exercise of judicial oversight that would have no warrant. See *State v. Wanrow*, supra; *State v. Thompson*, supra. Accordingly, we hold that the trial court did not err in overruling defendant's demurrer to the information.

II

Alleged Improper Cross-Examination

Defendant next argues that he was deprived of a fair trial and of due process of law because the prosecutor elicited evidence on cross examination of a defense witness that defendant had indicated a willingness to plead guilty to second-degree manslaughter. The trial court originally overruled the defense objection to this cross-examination but later reversed its ruling and ordered the evidence stricken, admonishing the jury to disregard it.

---

1. In 1979 the homicide statutes were amended. SDCL 22–16–9 as amended by 1979 S.D. Sess. Laws ch. 160, § 2A, now reads: "Homicide is manslaughter in the first degree when perpetrated without any design to effect death by a person engaged in the commission of any felony other than as provided in § 22–16–4."
SDCL 22–16–4, the current felony murder statute, provides: "Homicide is murder when perpetrated without authority of law and with a premeditated design to effect the death of the person killed or of any other human being, or

when committed by a person engaged in the perpetration of, or attempt to perpetrate, any arson, rape, robbery, burglary, kidnapping, or unlawful throwing, placing, or discharging of a destructive device or explosive."

2. SDCL 26–10–1 states: "Any person who abuses, exposes, tortures, torments or cruelly punishes a minor in a manner which does not constitute aggravated assault, is guilty of a Class 6 felony."

The statement in question had been made by defendant to his minister. (Defendant had lived in the minister's home for some four months prior to trial.) The pertinent cross–examination of the minister was as follows:

Q. And then as a result of his [defendant's] feeling that he's somehow responsible, he's told you that he's willing to plead to second degree manslaughter, is that correct?

A. Yes.

There followed several questions, unobjected to, regarding defendant's reasons for expressing a willingness to plead guilty to the lesser offense.

Defendant alleges that this cross–examination violated SDCL 19–12–12. The pertinent portion of that rule states:

[E]vidence of a plea of guilty ... or of an offer to plead guilty ... to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer....

SDCL 19–12–12 is patterned after Rule 410 of the Federal Rules of Evidence, which in turn is identical to Rule 11(e)(6) of the Federal Rules of Criminal Procedure. See *United States v. Herman*, 544 F.2d 791 (5th Cir. 1977); 2 Weinstein's Evidence ¶ 410, at 410–8 (1980). The purpose of the two federal rules is to promote open and uninhibited plea discussions. *United States v. Herman*, supra. As stated by the Court of Appeals for the Second Circuit:

The purpose of F.R.Cr.P. 11(e)(6) is to encourage frank discussion in plea bargaining negotiations ... since plea agreements are essential to the disposition of the bulk of cases in our criminal system.... The primary concern of the rule is the fairly formal plea bargaining between the defendant's counsel and the United States Attorney after charges have been made or are about to be made. *United States v. Arroyo–Angulo*, 580 F.2d 1137, 1148 (2d Cir. 1978) (citations omitted).

In discussing the policy underlying the two rules, the Court of Appeals for the Fifth Circuit wrote, "In essence, the rule of inadmissibility is designed to serve both as an incentive and as a prophylactic; the rule both encourages and protects a free plea dialogue between the accused and the government." *United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir. 1978). See also *United States v. Grant*, 622 F.2d 308 (8th Cir. 1980).

 In the light of the purpose of the rule, we hold that an offer to plead guilty must be made to one who is in a position of authority to accept it before evidence of such an offer is rendered inadmissible. The federal rule upon which SDCL 19–12–12 was patterned contemplates an exchange between the accused and agents of the government. "[T]he primary concern of the draftsmen ... was with fairly formal plea bargaining between the United States Attorney and counsel for defendant after charges had been, or were about to be, made." 2 Weinstein's Evidence ¶ 410[08], at 410–46 (1980). See *United States v. Stirling*, 571 F.2d 708 (2d Cir. 1978); *United States v. Grant*, supra. Whatever the ultimate scope of our rule may prove to be in cases in which an offer to plead guilty has been made to law enforcement officials other than members of the state's attorney's office (compare *United States v. Herman*, supra, with *United States v. Grant*, supra),[3] in the present case defendant's expression of willingness to plead guilty to a lesser

3. We note that the United States Supreme Court has promulgated an amendment to Rule 410, which was to have gone into effect November 1, 1979. Congress delayed the effective date of the amendment, and of the comparable amendment of the Rules of Criminal Procedure, to December 1, 1980, unless approved earlier. Act of July 31, 1979, Pub.L.No. 96–42, 93 Stat. 326. "Aside from clarifying language, the main thrust of the proposed changes is to assure that the rule does not cover discussions between suspects and law enforcement agents. A case such as *United States v. Herman* ... would presumably not be covered by the amended rule." 2 Weinstein's Evidence ¶ 410, at 410–2 (1980). See also 2 D. Louisell and C. Mueller, Federal Evidence § 184, at 106–08 (Supp. 1980).

offense was not made to anyone even remotely associated with the prosecution. Accordingly, we hold that the cross–examination in question was not improper.

### III

### Alleged Improper Use of Photograph

■ Defendant contends that the trial court erred in allowing the prosecution to exhibit a photograph of the deceased child to the victim's mother.

The trial court made specific inquiry of the State regarding the purpose for which the photograph was being offered. Although that purpose–identification of the victim–had been at least substantially accomplished through other witnesses, we conclude that the trial court did not abuse its discretion in overruling defendant's objection. *State v. Kaseman*, 273 N.W.2d 716 (S.D.1978); *State v. Satter*, 90 S.D. 485, 242 N.W.2d 149 (1976).

### IV

### Sentence

■ Defendant contends that his sentence of forty–nine years ten months is excessive and thus violates his constitutional guarantee against cruel and unusual punishment. We do not agree. The sentence imposed is within the statutory limits.[4] Although certainly substantial, the sentence cannot be characterized as one that would shock the conscience of the Court. Accordingly, it will not be set aside. *State v. Helm*, 287 N.W.2d 497 (S.D.1980).

### V

We have considered defendant's contention that the evidence was insufficient to prove that he was sane at the time the offense was committed and conclude that it is without merit.

### Conclusion

The judgment of conviction is affirmed.

All the Justices concur.

---

4. First–degree manslaughter is a Class 1 felony. SDCL 22–16–15. A Class 1 felony is punishable by life imprisonment in the state penitentiary. In addition, a fine of $25,000 may be imposed. SDCL 22‑6‑1(2).