IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31138-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | OPINION PUBLISHED |
| MATTHEW DAVID LEONARD, | ) | IN PART |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Matthew David Leonard was convicted following a jury trial of second degree felony murder; the predicate felony alleged by the State was his second degree assault of the victim, which resulted in death. Mr. Leonard argues on several grounds that the felony murder provision of our second degree murder statute, RCW 9A.32.050(1)(b), should not be construed to apply when the predicate felony committed by the defendant is an assault that results in death. He also challenges the to-convict instruction given by the court and its findings that he has the present or future ability to pay legal financial obligations (LFOs) imposed by the court.

Following amendment in 2003, the second degree murder statute is not ambiguous. All of Mr. Leonard's remaining arguments are foreclosed by controlling precedent—some old, and some new. For that reason, and because Mr. Leonard's pro se statement of additional grounds identifies no error or abuse of discretion by the trial court, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Matthew David Leonard was found guilty of second degree felony murder while armed with a deadly weapon. The victim, Jason Linder, was killed in a fight between patrons of a tavern in Yakima that began inside the tavern and continued outside, after patrons were told by tavern management to leave. Mr. Linder was stabbed one time in the chest by Mr. Leonard and died from loss of blood. The defense's theory at trial was that Mr. Leonard had acted in self-defense and in the justifiable defense of his sister.

At trial, the jury was instructed on both alternatives of the charged crime of second degree murder (intentional murder and felony murder) and on first degree manslaughter as a lesser included offense of second degree intentional murder. Self-defense and justifiable homicide instructions were given as to each crime. The to-convict instructions all included language that "[i]f you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty." Clerk's Papers at 130.

The jury found Mr. Leonard not guilty of second degree intentional murder, but guilty of second degree felony murder. It returned a special verdict that he was armed with a deadly weapon at the time of commission of the crime. At sentencing, the trial court found that Mr. Leonard has the current or future ability to pay the LFOs imposed by the court, including costs of incarceration and medical care. Mr. Leonard appeals.

ANALYSIS

Mr. Leonard implicitly assigns error to the trial court's instruction on second degree felony murder and the sufficiency of the evidence to support the jury's verdict of guilt on that charge, arguing that (1) the second degree murder statute should be interpreted to include assault as a predicate crime to felony murder only when the assault was not the cause of death, (2) the second degree murder statute violates a defendant's equal protection right, and (3) we should reconsider Washington courts' prior unwillingness to adopt a "merger" rule for felony murder that treats an assault as merging into the resulting homicide if the assault victim dies.

Mr. Leonard also assigns error to the trial court's to-convict instructions as misleading the jury as to its power to acquit, and to the court's findings that Mr. Leonard has the current or future ability to pay LFOs. We address the issues in turn.

I.    *History of related challenges to Washington's second degree murder statute*

Mr. Leonard challenges Washington's second degree murder statute, RCW 9A.32.050, on three grounds, all of which are the same as or similar to objections that defendants have raised for 50 years to the scope of second degree felony murder under Washington law. We begin, then, with a history of those objections and the judicial response, starting with the Washington Supreme Court's 1966 decision in *State v. Harris*, 69 Wn.2d 928, 421 P.2d 662 (1966).

3

Former RCW 9.48.040(2) (1909) was challenged in *Harris*, and provided:

The killing of a human being, unless it is excusable or justifiable, is murder in the second degree when—
(1) Committed with a design to effect the death of the person killed or of another, but without premeditation; or
(2) When perpetrated by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a felony other than those enumerated in RCW 9.48.030 [robbery, rape, burglary, larceny or arson in the first degree].

The defendant in *Harris* was convicted of second degree felony murder under subsection (2) of the statute. The predicate felony ("precedent" felony was the term in use at the time) was Harris's second degree assault of the victim, whom he had shot, and who died of her wound. Harris urged the court to adopt the New York "merger rule," under which the predicate felony in a felony murder must constitute a crime independent of the homicide. Under the merger rule, a felony assault—not being independent—merges into the resulting homicide. *State v. Thompson*, 88 Wn.2d 13, 17, 558 P.2d 202, *appeal dismissed*, 434 U.S. 898, 98 S. Ct. 290, 54 L. Ed. 2d 185 (1977).

The *Harris* court refused to adopt the New York merger rule. It reasoned that New York adopted the rule in response to that state's criminalization of all felony murder as first degree murder. Since "practically all" homicide deaths are the direct or indirect result of an assault by the perpetrator, "under New York law, every homicide which was not justifiable or excusable would amount to first-degree murder [and] all the second-degree murder and manslaughter statutes would have been emasculated." *Harris*, 69

4

Wn.2d at 933. Washington's criminal laws were less harsh; the legislature had provided that only the felonies of robbery, rape, burglary, larceny and arson in the first degree would support a charge of first degree felony murder. Other felonies, if resulting in death, could only be the basis of a second degree murder charge. The *Harris* court found "no reason" to adopt the merger rule "[i]n light of the distinctions made in our own statutes." *Id.* at 932.

A decade later, our Supreme Court was asked in *Thompson* to reconsider adoption of the merger rule. By the time of its 1977 decision, the Supreme Court acknowledged that "[m]ost states which have considered the question have adopted the merger rule, resulting in a holding that only felonies independent of the homicide can support a felony murder conviction." *Thompson*, 88 Wn.2d at 17. Nonetheless, our Supreme Court adhered to its decision rejecting the rule. The court pointed out that courts universally regarded the question of merger as one of statutory interpretation rather than constitutional right, and noted that the Washington legislature had taken no action to modify the second degree murder statute in response to *Harris*'s refusal to read a merger concept into the statute.

*Thompson* had implicitly rejected a constitutional challenge to the second degree murder statute, but that did not deter critics of felony murder from turning to the federal and state constitutions as the next basis for attack. A strong dissent in *Thompson* had concluded that second degree felony murder violated a defendant's right to substantive

5

due process by eliminating the requirement that the State must prove specific intent in order to convict a defendant of a crime that it viewed as fundamentally malum in se. *Id.* at 24 (Utter, J., dissenting). It also found a violation of equal protection, reasoning that the broad discretion vested in a prosecutor to charge similar defendants with more, or less, serious crimes (with second degree murder or with manslaughter) "creates a possibility for unequal treatment under the law which cannot pass constitutional muster." *Id.* at 27. A year after *Thompson*, the constitutional arguments were presented again in *State v. Wanrow*, 91 Wn.2d 301, 306-10, 588 P.2d 1320 (1978), which addressed them explicitly.

*Wanrow* rejected the constitutional arguments in the first instance as having been rejected by the United States Supreme Court. As *Wanrow* explained, an appeal of right under former 28 U.S.C. § 1257(2) (1970) had been taken from its decision in *Thompson*, but was dismissed by the Supreme Court for want of a substantial federal question—a dismissal that operated as a decision on the merits.[1] *See Thompson*, 434 U.S. 898. And

---

[1] Before 1988, a decision by a state court upholding a state statute against federal constitutional attack was within the United States Supreme Court's appellate jurisdiction under former 28 U.S.C. § 1257(2). As the Supreme Court explained in *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S. Ct. 2281, 45 L. Ed. 2d 223 (1975), when presented with such an appeal,

> [W]e had no discretion to refuse adjudication of the case on its merits as would have been true had the case been brought here under our certiorari jurisdiction. We are not obligated to grant the case plenary consideration . . . but we were required to deal with its merits. . . . As Mr. Justice Brennan once observed, "[v]otes to affirm summarily, and to dismiss for want of a substantial federal question, it hardly needs comment, are votes on the merits of a case . . . ." *Ohio ex rel. Eaton v. Price*, 360 U.S. 246,

6

even if the United States Supreme Court's dismissal of the appeal of *Thompson* were not controlling on the constitutional questions, the *Wanrow* court held that it, too, would reject the constitutional challenges, "for we find no violation of due process or equal protection in the felony-murder rule." 91 Wn.2d at 311. On the issue of equal protection, the court explained:

> Although the events giving rise to the prosecution of petitioner may support charges for varying crimes carrying varying punishments, the elements of those crimes are different. Proof of the elements of one does not constitute proof of the elements of another. Nor does it violate petitioner's right to equal protection that the prosecutor may choose to enforce one criminal statute against her and not another. The discretion vested in the prosecutor to selectively enforce criminal statutes is not unconstitutional if not based on unjustifiable standards.

*Id.* at 312.

Another decade passed before Clyde Dale Leech, having been convicted of second degree felony murder for a fire fighter's death occurring in the furtherance of Leech's arson, asked the Washington Supreme Court to reconsider its position that the felony murder rule was unconstitutional—specifically, he asked the court to agree that his equal protection rights were violated when he was charged with second degree felony murder rather than manslaughter. *State v. Leech*, 114 Wn.2d 700, 712, 790 P.2d 160 (1990). This time, a unanimous court declined to reconsider *Wanrow* and explained, again, that

---

247, 79 S. Ct. 978, 3 L. Ed. 2d 1200 (1959).
(Some alterations in original.)

7

there is no equal protection violation when the crimes that the prosecuting attorney has discretion to charge require proof of different elements. *Id.* at 711. In *State v. Crane*, 116 Wn.2d 315, 333, 804 P.2d 10 (1991), when the defense yet again asked the court to abandon the felony murder doctrine whereby assault is a predicate felony for second degree murder; the court stated, "We have consistently refused this invitation and refuse it once more."

It was over 20 years later, in *Andress*, that our Supreme Court relented and granted a personal restraint petition that urged the court to reconsider whether assault can serve as the predicate felony for second degree felony murder. *In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002). Having examined its prior decisions and concluded that none had analyzed changes to the language of the murder statute when the criminal code was substantially revised in 1975, the *Andress* court focused on the 1975 changes and concluded that they suggested a modified legislative intent. At the time of the *Andress* decision, the second degree murder statute provided:

> "(1) A person is guilty of murder in the second degree when:
> " . . . .
> "(b) He commits or attempts to commit any felony other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants
> . . . ."

*Id.* at 608 (quoting former RCW 9A.32.050 (1976)).

The *Andress* court concluded that the "in furtherance of" language made no sense if applied where assault is the predicate felony, characterizing the "in furtherance of" language as a "strong indication that the Legislature does not intend that assault should serve as a predicate felony for second degree felony murder." *Id.* at 611. The court also reviewed harsh results that follow from a prosecutor's discretion to charge second degree felony murder based on assault, including that the jury will not be instructed on lesser included or lesser degree offenses, and that the State may, depending on the circumstances, be relieved of any burden to prove intent or any comparable mental state. Together, the court held that the textual change to the statute and the "undue harshness" of using assault as a predicate felony "persuades us that the Legislature did not intend assault to serve as the predicate felony for second degree felony murder." *Id.* at 615-16.

The legislature responded quickly by amending the second degree murder statute to expressly include assault as a predicate offense to felony murder. LAWS OF 2003, ch 3, § 2. The 2003 legislation included the following statement of intent:

> The legislature finds that the 1975 legislature clearly and unambiguously stated that any felony, including assault, can be a predicate offense for felony murder. The intent was evident: Punish, under the applicable murder statutes, those who commit a homicide in the course and in furtherance of a felony. This legislature reaffirms that original intent and further intends to honor and reinforce the court's decisions over the past twenty-eight years interpreting "in furtherance of" as requiring the death to be sufficiently close in time and proximity to the predicate felony. The legislature does not agree with or accept the court's findings of legislative intent in *State v. Andress, Docket No. 71170-4 (October 24, 2002)*, and

9

reasserts that assault has always been and still remains a predicate offense for felony murder in the second degree.

LAWS OF 2003, ch. 3, § 1.

With that introduction, we turn to Mr. Leonard's challenges.

### A. Equal Protection

Mr. Leonard's argument that the second degree felony murder statute violates his equal protection rights is indistinguishable from the equal protection arguments rejected by the Washington Supreme Court for a half century in *Thompson*, *Wanrow*, and *Crane*, and by the United States Supreme Court's dismissal of the appeal of *Thompson*.

Here is Mr. Leonard's statement of the argument:

> Mr. Leonard is in a class of defendants who commit second degree assault which results in death. Under the statutes, the prosecution was given the astounding choice of charging such persons with either second degree felony murder or the much lesser crime of manslaughter . . . . Yet there is absolutely no distinction between the people who would be subject to the far disparate punishments and higher crimes, save for the prosecutor's unfettered discretion. The complete lack of any standards for treating similarly situated defendants who commit exactly the same acts so differently cannot possibly serve any legitimate state objective.

Br. of Appellant at 12.

Compare the position of the dissent in *Thompson*, implicitly rejected by the *Thompson* majority:

> In this instance, on the basis of proof of precisely the same acts on the part of the defendant (*i.e.*, the shooting of the decedent resulting in his unintended death), the prosecutor was free at his discretion to charge assault in the second degree, or manslaughter, or murder in the second

degree. . . . Thus the prosecutor could, by proving precisely the same facts, subject the defendant to substantially different penalties based upon varying proofs, depending upon his own judgment as to the appropriate charge. The broad discretion which results in this instance creates a possibility for unequal treatment under the law which cannot pass constitutional muster.

88 Wn.2d at 27 (Utter, J., dissenting).

As pointed out in *Wanrow*, the position implicitly rejected by the Washington Supreme Court in *Thompson* was the same position rejected by the United States Supreme Court as presenting no substantial federal question. The *Wanrow* court went on to explain that even if it were not bound by the United States Supreme Court's rejection of the equal protection argument, it could see no violation of equal protection either, for "no constitutional defect exists when the crimes which the prosecutor has discretion to charge have different elements," adding, "That is the case here." *Wanrow*, 91 Wn.2d at 312.

As was the case in *Wanrow*, the statutes in effect at the time of Mr. Leonard's crime required proof of different elements for second degree felony murder and manslaughter. To prove second degree felony murder, the State was required to prove that Mr. Leonard engaged in a felony (that he assaulted Mr. Linder with a deadly weapon) resulting in his death, whereas manslaughter in the second degree would have required proof that he was criminally negligent and that Mr. Linder's death resulted from his negligent acts. Because the charges that the prosecutor had discretion to bring

11

required proof of different elements, there is no equal protection violation under clearly controlling United States Supreme Court and Washington Supreme Court precedents.[2]

### B. Construction of RCW 9A.32.050

Mr. Leonard also argues that despite the legislature's 2003 amendment of RCW 9A.32.050 to explicitly identify assault as a predicate felony to second degree felony murder, the new language "does not declare whether it applies to all assaults or only those which are separate from the act which causes the death." Br. of Appellant at 8. He argues that the ambiguity that concerned the Supreme Court in *Andress* remains, because the amended statute retains the "in furtherance of" language. He urges us to apply the rule of lenity and construe RCW 9A.32.050(1)(b) to allow assault to serve as the predicate felony only where the assault is not the act that causes the death.

---

[2] The defendants in *Thompson*, *Wanrow*, and *Crane* were all charged under the 1909 version of the second degree felony murder statute. As the State points out, the Court of Appeals has continued to reject equal protection challenges raised under later versions of the statute. *See State v. Gilmer*, 96 Wn. App. 875, 981 P.2d 902 (1999); *State v. Goodrich*, 72 Wn. App. 71, 79, 863 P.2d 599 (1993); *State v. Armstrong*, 143 Wn. App. 333, 178 P.3d 1048 (2008); *State v. Gordon*, 153 Wn. App. 516, 223 P.3d 519 (2009), *rev'd on other grounds*, 172 Wn.2d 671, 260 P.3d 884 (2011). We do not view the constitutional issue as turning on the language of past versions or possibly future versions of the second degree murder statute, but as turning, instead, on the existence of prosecutorial discretion to charge the more harshly punished crime of second degree felony murder or to charge manslaughter, with its distinguishable elements. Thus viewed, Mr. Leonard presents the same issue as was decided under the Washington Supreme Court and United States Supreme Court decisions that we treat as controlling.

Division One of this court rejected the argument advanced by Mr. Leonard in *State v. Gordon*, 153 Wn. App. 516, 527-29, 223 P.3d 519 (2009), *rev'd on other grounds*, 172 Wn.2d 671, 260 P.3d 884 (2011). Mr. Leonard asks us to disregard *Gordon*, contending that it (1) ignores the legislature's stated intent as to the meaning of "in furtherance of"; (2) ignores the holding in *In re Personal Restraint of Bowman*, 162 Wn.2d 325, 331, 172 P.3d 681 (2007) that the felony murder scheme is intended to apply "when the underlying felony is *distinct* from, yet related to, the homicidal act"; and (3) fails to apply the rule of lenity.

As amended, the statute states in relevant part:

A person is guilty of murder in the second degree when:
    . . . .
    (b) He or she commits or attempts to commit any felony, *including assault* . . . and, in the course of and in furtherance of such crime or in immediate flight therefrom, he or she, or another participant, causes the death of a person other than one of the participants.

RCW 9A.32.050 (emphasis added). "For a statute to be ambiguous, two reasonable interpretations must arise from the language of the statute itself, not from considerations outside the statute." *Cerrillo v. Esparza*, 158 Wn.2d 194, 203-04, 142 P.3d 155 (2006). We agree with *Gordon* that following the 2003 amendment, the language is unambiguous; there is nothing in the statute itself that leaves us wondering if "any felony including assault" means "any felony including those assaults that are not the act causing death."

13

Retention of the "in furtherance of" language is not enough to create an ambiguity. Mr. Leonard fails to consider that even *Andress* did not rely on its concern about that language alone to find an ambiguity—it relied on that language "[i]n conjunction" with its conclusion that the legislature would not have intended the undue harshness resulting from including assault as a predicate felony. *Andress*, 147 Wn.2d at 615. With its explicit inclusion of assault and its statement of intent, the 2003 legislature pointedly answered both of the *Andress* court's concerns.

The language from *Bowman*, as a consideration outside the statute, cannot create an ambiguity. Moreover, in *Bowman* the court was applying the second degree murder statute in effect prior to 2003, as construed in *Andress*. We are dealing with the amended statute. Following the 2003 amendment, it can no longer fairly be said that Washington's felony murder statute is intended to apply only when the underlying felony is distinct from the homicidal act.

Because the statute is unambiguous, we do not reach the lenity issue. *City of Aberdeen v. Regan*, 170 Wn.2d 103, 106, 239 P.3d 1102 (2010).

### C. Reconsideration of the Merger Rule

Finally, Mr. Leonard argues that it is time for Washington to reconsider its "ill-conceived notion" of refusing to adopt the merger rule for felony murder with an underlying assault. Br. of Appellant at 15. The Washington Supreme Court rejected adoption of the merger rule in *Harris*, and, as noted in *Wanrow*, "treated the matter as

settled in *State v. Roberts*, 88 Wn.2d 337, 344 n.4, 562 P.2d 1259 (1977)." 91 Wn.2d at 302-03. Decades later, *Andress* held that assault was not a predicate felony under the statute as amended in 1975, but *Andress* was decided as a matter of statutory construction and relied in part on the "in furtherance of" language added by the 1975 changes to the criminal code. Our Supreme Court has never overruled its decisions refusing to adopt the merger rule. On the issue of whether Washington applies the merger rule to felony murder, *Harris*, *Roberts*, and *Wanrow* are binding on all lower courts in the state; were we to fail to follow directly controlling Supreme Court authority, we would err. *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 578, 146 P.3d 423 (2006). We decline the invitation to reconsider our Supreme Court's rejection of the merger rule.

Affirmed.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.

### II. The to-convict instruction and findings re LFOs

In *State v. Wilson*, 176 Wn. App. 147, 151, 307 P.3d 823 (2013), *review denied*, 179 Wn.2d 1012 (2014), the court agreed with the reasoning of *State v. Brown*, 130 Wn. App. 767, 770-71, 124 P.3d 663 (2005) and *State v. Meggyesy*, 90 Wn. App. 693, 696, 958 P.2d 319 (1998), *abrogated on other grounds by State v. Recuenco*, 154 Wn.2d 156, 110 P.3d 188 (2005), *rev'd*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006), that

15

the kind of to-convict instruction Mr. Leonard argues should have been given in his case is equivalent to notifying the jury of its power to acquit against the evidence, and that a defendant is not entitled to a jury nullification instruction. Our division, like both other divisions of the Court of Appeals, has held that a criminal defendant's right to a jury trial is not violated by the pattern to-convict instruction that was given in Mr. Leonard's case. The court did not err in giving the instruction.

In *State v. Duncan*, 180 Wn. App. 245, 253, 327 P.3d 699, *petition for review filed*, No. 90188-1 (April 30, 2014), we observed that whether a defendant will be perpetually unable to pay LFOs imposed at sentencing is not an issue that defendants overlook, it is one that they reasonably waive, and concluded that we would henceforth decline to address a challenge to a court's findings on that issue if raised for the first time on appeal. RAP 2.5(a). Our position is consistent with that of the other divisions of our court. *See State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492, *review granted*, 178 Wn.2d 1010 (2013) and *State v. Calvin*, 176 Wn. App. 1, 316 P.3d 496, 507-08, *petition for review filed*, No. 89518-0 (Nov. 12, 2013). The record in Mr. Leonard's case does not affirmatively show an inability to pay LFOs now or in the near future, as was the case in *State v. Bertrand*, 165 Wn. App. 393, 267 P.3d 511 (2011). Mr. Leonard did not object to the findings in the trial court and thereby waived any challenge.

16

STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Leonard raises six. We address them in turn.

*Admission of evidence.* Mr. Leonard contends the trial court erred by allowing a knife to be admitted into evidence. The knife had been found during the execution of a search warrant for Mr. Leonard's car. It was found in a purse in the front seat. Mr. Leonard argues that the knife, which his sister testified belonged to her and had remained in her purse the entire evening, was unrelated to the crime and was prejudicial. SAG at 2-3.

The defense raised no objection when the State moved to admit and publish the knife. A party must timely object to the introduction of evidence in order to preserve the alleged evidentiary error for appeal. *State v. Davis*, 141 Wn.2d 798, 849-50, 10 P.3d 977 (2000). Because no objection was made in the trial court, error, if there was any, was not preserved.

*Prosecutorial misconduct.* Mr. Leonard contends that the prosecutor committed prosecutorial misconduct when he commented on evidence that was neither authenticated nor tested, used inflammatory comments and arguments not supported by the evidence, and appealed to the jury's passion and prejudice during closing. To succeed on a claim of prosecutorial misconduct a defendant must demonstrate that the comment was both improper and prejudicial. While Mr. Leonard sets forth a number of statements made by

17

the prosecutor, he does not explain, with respect to any statement, why he believes it constituted misconduct or how it prejudiced him. His argument is insufficiently stated for us to consider it. RAP 10.10(c).

*Ineffective assistance.* Mr. Leonard argues he was denied effective assistance of counsel when his lawyer failed to object to the State's offer of the knife in evidence and when his lawyer did not request instruction on excusable homicide. To succeed on a claim of ineffective assistance, Mr. Leonard must show that counsel's performance was both deficient and the deficient performance prejudiced him.

Mr. Leonard fails to identify what objection his lawyer should have made to admission of the knife and why the objection was likely to have been sustained. His statement of the ground is again insufficient under RAP 10.10(c).

As to Mr. Leonard's complaint that the jury was not instructed on excusable homicide, "[h]omicide is excusable when committed by accident or misfortune in doing any lawful act by lawful means, without criminal negligence, or without any unlawful intent." RCW 9A.16.030. Comments to the Washington pattern jury instruction on excusable homicide point out that "[u]nlike other defenses, the 'defense' of excusable homicide adds little if anything to the jury's analysis," and "[i]n many cases, an instruction on excusable homicide will confuse the jury without providing any meaningful guidance." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 15.01, at 228 (3d ed. 2008). In Mr. Leonard's case, the State

18

bore the burden of proving an intentional act for intentional murder, an unlawful assault for felony murder, and criminal negligence for first degree manslaughter. Mr. Leonard fails to demonstrate why his counsel was ineffective for failing to request an instruction that added nothing and might be misunderstood by the jury to impose a burden of proof on the defense.

"*State did not appraise defendant on common law assault to properly defend against.*" SAG at 14 (capitalization omitted). Mr. Leonard's statement of this ground is incomprehensible. We are unable to address it.

*Insufficient evidence.* Mr. Leonard contends that the State presented insufficient evidence that he was guilty of assault in the second degree and second degree felony murder. Mr. Leonard testified that he stabbed Mr. Linder and explained his actions as in protection of his sister. Other evidence suggested that Mr. Leonard was the aggressor. The evidence was clearly sufficient.

Affirmed.

                                      _____
                                        Siddoway, C.J.

WE CONCUR:

_____
Brown, J.

_____
Fearing, J.

19