172 P.3d 681 (2007)
In the Matter of the Personal Restraint Petition of Jacob BOWMAN, Petitioner,
v.
STATE of Washington, Respondent.
In the Matter of the Personal Restraint Petition of Johnny Nav, Petitioner,
v.
State of Washington, Respondent.
No. 78739-5.
Supreme Court of Washington, En Banc.
Argued February 27, 2007.
Decided November 21, 2007.
*682 Suzanne Lee Elliott, Attorney at Law, Jason Brett Saunders, Washington Appellate Project, Seattle, WA, for Petitioner.
Hilary A. Thomas, Kimberly Anne Thulin, Whatcom County Prosecutors Office, Bellingham, WA, Andrea Ruth Vitalich, King County Prosecutor's Office, Seattle, WA, for Respondent.
MADSEN, J.
¶ 1 Petitioner Johnny Nav pleaded guilty to second degree felony murder with the predicate crime of reckless endangerment, and petitioner Jacob Bowman pleaded guilty to second degree felony murder with the predicate crime of drive-by shooting.[1] Petitioners seek review of a Court of Appeals decision dismissing their respective personal restraint petitions as time-barred. The issue presented here is whether our holding in In re Personal Restraint of Andress, 147 Wash.2d 602, 56 P.3d 981 (2002), precludes use of the offense of drive-by shooting or reckless endangerment as a predicate for the crime of second degree felony murder. Because we conclude it does not, we affirm the Court of Appeals.

FACTS
¶ 2 In 1997 Johnny Nav pleaded guilty to second degree felony murder with the predicate crime of reckless endangerment. In 1998 Jacob Bowman pleaded guilty to second degree felony murder with the predicate crime of drive-by shooting. Both petitioners fired weapons from a vehicle, killing another person.
¶ 3 Bowman and Nav filed pro se personal restraint petitions in October 2003 and January 2005, respectively, seeking relief from confinement on their second degree murder convictions in light of this court's decision in Andress. The acting chief judge of the Court of Appeals linked the two petitions and the court subsequently dismissed Bowman's and Nav's personal restraint petitions as time-barred under RCW 10.73.090(1) (limiting collateral review to one year after the judgment becomes final). Because Bowman and Nav were convicted of drive-by shooting/reckless endangerment and not assault, the Court of Appeals declined to "extend" Andress' holding. In re Pers. Restraint Petition of Bowman, noted at 132 Wash.App. 1017, slip op. at 4-5, 2006 WL 848413, *2 (2006). Accordingly, the court held Andress is not a change in the law material to petitioners' convictions because that decision was "limited to whether the crime of assault could be used as a predicate for second degree felony murder." Id. at 4, 2006 WL 848413, *2 (emphasis added); see RCW 10.73.100(6) (providing an exception for a significant change in the law, which is material to the conviction or sentence). Thus, the court determined Bowman's and Nav's petitions were not exempt from the one year time bar in RCW 10.73.090. Bowman, slip op. at 5-6, 2006 WL 848413, *2. Bowman and Nav sought review of the Court of Appeals' decision, which we granted at 158 Wash.2d 1002, 148 P.3d 1045 (2006).

*683 ANALYSIS
¶ 4 In Andress we were asked to decide whether assault could serve as a predicate crime to support a conviction for second degree felony murder following the 1976 amendment to the second degree murder statute, former RCW 9A.32.050 (1975). Under the earlier statute, a person could be convicted of second degree felony murder in connection with the killing of another "[w]hen perpetrated by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a felony other than those enumerated in [former] RCW 9.48.030." Former RCW 9.48.040(2) (1909).
¶ 5 Former RCW 9.48.040 was repealed effective July 1, 1976, when the legislature recodified some criminal statutes, amending some of them at the same time. Laws of 1975, 1st Ex.Sess., ch. 260, § 9A.32.050 (effective July 1, 1976), see Laws of 1975, 1st Ex.Sess., ch. 260, § 9A.04.010; Laws of 1975-76, 2d Ex.Sess., ch. 38, § 4. The new statute defining second degree felony murder changed the language relating to felony murder, providing in relevant part that
(1) A person is guilty of murder in the second degree when:
. . . .
(b) He commits or attempts to commit any felony other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants.
Former RCW 9A.32.050 (1976) (emphasis added). In Andress, we held assault cannot serve as the predicate felony for second degree murder under former RCW 9A.32.050 because the "`in furtherance of' language would be meaningless as to that predicate felony." Andress, 147 Wash.2d at 610, 56 P.3d 981. We concluded, "unlike the cases where arson is the predicate felony, the assault is not independent of the homicide." Id. (emphasis added).[2]
¶ 6 In reaching our conclusion, we carefully reviewed the history of the felony murder rule and the relevant statutory and decisional law that had developed since this court first rejected the argument that assault cannot serve as the predicate felony to felony murder. We noted that in 1966, this court first considered, in State v. Harris, 69 Wash.2d 928, 421 P.2d 662 (1966), whether the felony murder rule should apply to homicides where the predicate felony is an assault on the person killed. Andress, 147 Wash.2d at 607, 56 P.3d 981. In Harris we recognized that at the time the felony murder doctrine was first recognized, nearly all felonies were punishable by death. Harris, 69 Wash.2d at 931, 421 P.2d 662. We noted that, over time, offenses that once were characterized as misdemeanors and gross misdemeanors were made felonies by statutes, and as a result the common law rule became too harsh. Andress, 147 Wash.2d at 606, 56 P.3d 981. We observed that the harsh impact of the rule was ameliorated in American jurisdictions in several ways, including adoption of a "merger rule." Under that rule "`the precedent felony, if an assault on the person killed, is merged in the resulting homicide.'" Id. at 606, 56 P.3d 981 (quoting Harris, 69 Wash.2d at 932, 421 P.2d 662). Put another way, an assault cannot be the predicate felony for felony murder because it is not a felony independent of the homicide. Id. at 607, 421 P.2d 662.
¶ 7 As we noted in Andress, this court reaffirmed its decision in Harris, rejecting the merger rule in State v. Wanrow, 91 Wash.2d 301, 588 P.2d 1320 (1978) and State v. Thompson, 88 Wash.2d 13, 558 P.2d 202 (1977). Andress, 147 Wash.2d at 607, 56 P.3d 981. But, we also noted that the cases rejecting the merger rule preceded the 1976 amendment. Thus, we turned for guidance to State v. Leech, 114 Wash.2d 700, 790 P.2d 160 (1990), in which we had construed the "`in furtherance of'" language of the amendment *684 to mean that the death "`was sufficiently close in time and place to the arson to be part of the res gestae of that felony.'" Andress, 147 Wash.2d at 609, 56 P.3d 981 (quoting Leech, 114 Wash.2d at 709, 790 P.2d 160). This construction was necessary in order to avoid the absurd results that would have followed if the "in furtherance of" language applies only to the time when the arson fire was set. Id.
¶ 8 Applying our construction of the "in furtherance of" language from Leech, we reasoned that assault could not be used to support the charge of second degree felony murder. Specifically, we reasoned that as to assault, it made no sense to say that a death is sufficiently close in time and place to an assault as to be part of the res gestae of the assault. Andress, 147 Wash.2d at 610, 56 P.3d 981. Thus, we concluded that the legislature did not intend that assault serve as a predicate offense for second degree felony murder after the 1976 amendment to the statute. Id. at 610-11, 56 P.3d 981.
¶ 9 Bowman and Nav claim that the reasoning of Andress applies with equal force to their predicate crimes and does not require, as the State suggests, a "broad application"[3] or an extension of Andress, as the Court of Appeals held. In particular, they rely on a passage from Andress where we observed that
[i]t is nonsensical to speak of a criminal act  an assault  that results in death as being part of the res gestae of that same criminal act since the conduct constituting the assault and the homicide are the same. Consequently, in the case of assault there will never be a res gestae issue because the assault will always be directly linked to the homicide.
Id. at 610, 56 P.3d 981. Nav and Bowan contend that under Andress' reasoning, drive-by shooting, like assault, may not serve as the predicate offense to second degree felony murder because the drive-by shooting is not independent of and will always be "directly linked to the homicide." Id.
¶ 10 As explained below, Nav's and Bowman's contention that Andress is material to their cases is indeed an unduly expansive view of that decision.
¶ 11 First, as Andress explains, the felony murder statute is intended to apply when the underlying felony is distinct from, yet related to, the homicidal act. In the case of the crime of assault that results in death, the underlying felony is not distinct from the homicide. That is because assault statutes punish conduct causing bodily injury, or the fear of bodily injury, to another. In other words, assault can be viewed as a continuum, with the furthest point being death. As the Court of Appeals recently observed, homicide cannot result without an assault. State v. Daniels, 124 Wash.App. 830, 841, 103 P.3d 249 (2004). Thus, in Andress we concluded that applying the Leech construction of "in furtherance of" to the predicate crime of assault rendered an absurd result.
¶ 12 The same cannot be said when the predicate crime is drive-by shooting. Drive-by shooting was initially codified as first degree reckless endangerment. Prior to 1997 the drive-by shooting statute provided:
A person is guilty of reckless endangerment in the first degree when he or she recklessly discharges a firearm as defined in RCW 9.41.010 in a manner which creates a substantial risk of death or serious physical injury to another person and the discharge is either from a motor vehicle or from the immediate area of a motor vehicle that was used to transport the shooter or the firearm, or both, to the scene of the discharge.
Former RCW 9A.36.045(1) (1995). In 1997 the legislature substituted "drive-by shooting" for "reckless endangerment in the first degree." Laws of 1997, ch. 338, § 44.
¶ 13 It is plain to see that the drive-by shooting statute does not criminalize conduct that causes bodily injury or fear of such injury. Rather, the statute criminalizes specific reckless conduct that is inherently dangerous and creates the risk of causing injury or death. Although a drive-by shooting may cause fear of bodily injury, bodily injury, or even death, such a result is not required for conviction. Drive-by shooting does not require *685 a victim; it only requires that reckless conduct creates a risk that a person might be injured. Further, unlike in the case of assault, homicide can be committed without reckless discharge of a firearm.
¶ 14 Drive-by shooting and homicide are two separate and distinct crimes. Thus, unlike with the predicate crime of assault, the "in furtherance of" language of the felony murder statute retains its meaning where drive-by shooting is the predicate crime.
¶ 15 Second, although our decision in Andress rested primarily on the "in furtherance of" language of the 1976 amendment as applied to assault, much of our rationale is also reflected in the merger doctrine. For this reason we examined at length the history of the felony murder rule, tracing the history of this court's response to the "merger" rule, adopted in New York, California, and several other jurisdictions as a response to the harshness of the rule. As explained by the California Supreme Court, the merger rule was developed as
a shorthand explanation for the conclusion that the felony-murder rule should not be applied in circumstances where the only underlying (or "predicate") felony committed by the defendant was assault. The name of the doctrine derived from the characterization of the assault as an offense that "merged" with the resulting homicide. In explaining the basis for the merger doctrine, courts and legal commentators reasoned that, because a homicide generally results from the commission of an assault, every felonious assault ending in death automatically would be elevated to murder in the event a felonious assault could serve as the predicate felony for purposes of the felony-murder doctrine. Consequently, application of the felony-murder rule to felonious assaults would usurp most of the law of homicide, relieve the prosecution in the great majority of homicide cases of the burden of having to prove malice in order to obtain a murder conviction, and thereby frustrate the Legislature's intent to punish certain felonious assaults resulting in death (those committed with malice aforethought, and therefore punishable as murder) more harshly than other felonious assaults that happened to result in death (those committed without malice aforethought, and therefore punishable as manslaughter).
People v. Hansen, 9 Cal.4th 300, 311-12, 36 Cal.Rptr.2d 609, 885 P.2d 1022 (1994).
¶ 16 Unlike assault, use of drive-by shooting as the predicate crime for second degree felony murder does not frustrate the legislature's intent to establish gradations for assaultive conduct that results in death. Rather, application of the felony murder rule in the case of a drive-by shooting is consistent with the traditional purpose of the felony murder rule: punishing accidental, negligent, or reckless killings that occur in the course of a distinct felony.
¶ 17 As one commentator has explained, the key to the continued use of the felony murder rule is that the rule offers a rational, proportional grading of offenses. The felony murder rule acknowledges a widespread public perception that serious crimes, such as robbery, rape, and burglary, that result in death, are not simply a more serious version of the underlying felony. Rather, it is a different crime altogether, one that rises to the level of murder. See David Crump & Susan Waite Crump, In Defense of the Felony Murder Doctrine, 8 Harv. J.L. & Pub. Pol'y 359 (1985).
¶ 18 Finally, our decision in Andress did not rest solely upon our conclusion that the "in furtherance of" language makes no sense if applied where assault is the predicate felony. The undue harshness of using assault as the predicate felony for second degree felony murder also convinced us that the legislature did not intend assault to serve as a predicate for second degree felony murder. Andress, 147 Wash.2d at 616, 56 P.3d 981. We noted that manslaughter is not a lesser degree of second degree felony murder. Id. at 613, 56 P.3d 981 (citing State v. Tamalini, 134 Wash.2d 725, 953 P.2d 450 (1998)). Thus, a jury is not given the option of considering whether the defendant should be convicted of the lesser crime of first or second degree manslaughter in cases involving second degree felony murder with assault as the predicate felony. In contrast, manslaughter *686 may be a lesser included offense of intentional second degree murder. See State v. Berlin, 133 Wash.2d 541, 551, 947 P.2d 700 (1997).
¶ 19 Further, we noted that where assault is the predicate felony, the State can elect to charge second degree felony murder rather than second degree intentional murder and thus not have to establish intent to kill, regardless of whether there is evidence of intent to kill. By electing to charge second degree felony murder, the State does not have to prove any mental element as to the killing itself.
¶ 20 We also noted that if assault can serve as the predicate felony for the second degree felony murder rule, then a negligent third degree assault resulting in death can be second degree murder, although RCW 9A.32.070(1) provides that a person who with criminal negligence causes the death of another is guilty only of second degree manslaughter, which made little sense.
¶ 21 While it is true that felony murder has no lesser degrees and there are no lesser included offenses regardless of the predicate offense charged, the same harsh effect that results when assault is used as the predicate felony is not present when the predicate felony is drive-by shooting, i.e., elevating every assault ending in death to a murder.
¶ 22 We also recognize that following our decision in Andress, the legislature amended the second degree felony murder statute, effective February 12, 2003, to clarify that assault is included as a predicate crime under the second degree felony murder statute. Laws of 2003, ch. 3, § 1 ("The legislature does not agree with or accept the court's findings of legislative intent in State v. Andress . . . and reasserts that assault has always been and still remains a predicate offense for felony murder in the second degree."). The State repeatedly cites the 2003 amendment as evidence the legislature intended drive-by shooting to serve as a predicate offense for felony murder in the second degree under former RCW 9A.32.050. See Mot. Opposing Pet. for Review at 6. However,
[i]t is a fundamental rule of statutory construction that once a statute has been construed by the highest court of the state, that construction operates as if it were originally written into it. In other words, there is no "retroactive" effect of the court's construction of a statute; rather, once the court has determined the meaning, that is what the statute has meant since its enactment.

Johnson v. Morris, 87 Wash.2d 922, 927-28, 557 P.2d 1299 (1976) (emphasis in original) (citations omitted). As such, the 2003 amendment has no place in our analysis. Nevertheless, it is appropriate for this court to bear in mind that, while the felony murder can, and does in some circumstances, result in unfairly harsh treatment that is not commensurate with the defendant's culpability, the legislature has expressed its intent to maintain the felony murder statutes.

CONCLUSION
¶ 23 We hold that the legislature intended that the crime of drive-by shooting may serve as a predicate for second degree felony murder. Accordingly, we hold that Andress is not a significant change in the law which is material to the conviction or sentence constituting an exception to the one year time limit for challenging a conviction. We affirm the Court of Appeals.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, Justice TOM CHAMBERS, Justice CHARLES W. JOHNSON, Justice SUSAN OWENS, Justice JAMES M. JOHNSON, Justice BOBBE J. BRIDGE.
SANDERS, J. (dissenting).
¶ 24 "It is nonsensical to speak of a criminal act . . . that results in death as being part of the res gestae of that same criminal act since the conduct constituting [the criminal act] and the homicide are the same." In re Pers. Restraint of Andress, 147 Wash.2d 602, 610, 56 P.3d 981 (2002). An unduly harsh result occurs when an individual is convicted of murder and "the State does not have to prove intent to kill, or, indeed, any mental element as to the killing itself." Id. at 614, 56 P.3d 981. Standing on the pillars of these *687 well-reasoned principles, Justice Madsen, writing for the Andress majority, properly held assault may not serve as a predicate offense to support a conviction for second degree felony murder. Id. at 610, 56 P.3d 981.
¶ 25 However today the court reverses course and refuses to "extend" Andress's reasoning to situations where an individual commits acts constituting "drive-by shooting."[1] The reasoning of Andress need not be extended here, as the principles enunciated apply with equal force to drive-by shooting. Since the principles supporting our decision in Andress have not diminished in import, I would hold drive-by shooting cannot serve as the predicate felony for second degree felony murder for the same reasons assault cannot serve as the predicate felony.
¶ 26 Second degree felony murder punishes deaths caused "in the course of and in furtherance of" a felony. RCW 9A.32.050(1)(b). To be caused "in furtherance" of a felony, a death must be "sufficiently close in time and place to the [felony] to be part of the res gestae of that felony." State v. Leech, 114 Wash.2d 700, 709, 790 P.2d 160 (1990). In Andress we applied this definition and found assault is not available as a predicate offense because "the assault is not independent of the homicide." Andress, 147 Wash.2d at 610, 56 P.3d 981. Because the assault is always intertwined with the death, there is never a res gestae issue, making "the `in furtherance of' language . . . meaningless as to that predicate felony [of assault]." Id. Since a death cannot be both the direct result of and part of the res gestae of felony, the in furtherance language is meaningless where the predicate felony directly leads to death. Id. at 611, 56 P.3d 981. Since the court "will not construe a statute to reach an absurd result," the court refused to give effect to the felony murder statute where part of the statute is made meaningless. Id. at 610, 56 P.3d 981. Where a felony is directly related to the charged death, it renders the "in furtherance" language meaningless and may not be used as a predicate felony.
¶ 27 Like assault, drive-by shooting is intimately intertwined with the death of a victim. Reviewing the facts supporting the defendants' convictions demonstrates the truth of this statement. Johnny Nav "stuck his arm out the window of the moving vehicle and fired several shots" at a group of people, killing one and injuring two others. Suppl. Br. of Resp't (Nav) at 1-2. Jacob Bowman "drove to an apartment complex . . . and fired seven-to-nine bullets into an apartment"; two of these bullets struck and killed the victim. Suppl. Br. of Resp't (Bowman) at 2. There can be no principled understanding of these facts as anything except directly connected to the death of the victims. Because a drive-by shooting is always directly connected to the death, Andress' reasoning prohibits using drive-by shooting as a predicate offense for felony murder.
¶ 28 The Andress court also found a conviction based on assault as a predicate felony was unduly harsh because the State would not be required to prove "any mental element as to the killing itself." Andress, 147 Wash.2d at 614, 56 P.3d 981. This "`violates the most fundamental principle of the criminal law  "criminal liability for causing a particular result is not justified in the absence of some culpable mental state in respect to that result."'" State v. Tamalini, 134 Wash.2d 725, 746, 953 P.2d 450 (1998) (Sanders, J., dissenting) (quoting Commonwealth v. Matchett, 386 Mass. 492, 436 N.E.2d 400, 409 (1982) (quoting People v. Aaron, 409 Mich. 672, 708, 299 N.W.2d 304, 328 (1980))). In Andress we applied this principle to felony murder based on assault, stating:
[I]f assault can serve as the predicate felony for the second degree felony murder rule, then a negligent third degree assault resulting in death can be second degree murder, although RCW 9A.32.070(1) provides that a person who with criminal negligence causes the death of another is guilty only of second degree manslaughter. That makes little sense. *688 Andress, 147 Wash.2d at 615, 56 P.3d 981. This discrepancy in punishment led the court to determine assault could not be used as a predicate felony.
¶ 29 In Andress we found punishing a defendant for murder without a mental state of equivalent culpability was unduly harsh. Drive-by shooting does not require proof of intent to harm an individual.[2] As defined in RCW 9A.36.045, drive-by shooting merely requires an individual to "recklessly discharge[] a firearm" from a vehicle. Today's decision creates a discrepancy in punishment previously condemned by Andress. Under the majority's reasoning, a person can be found guilty of second degree murder for recklessly discharging a firearm, even though when a person recklessly causes the death of another, they are guilty of first degree manslaughter under RCW 9A.32.060(1)(a). "That makes little sense." Andress, 147 Wash.2d at 615, 56 P.3d 981.
¶ 30 The majority contends drive-by shooting can be credibly distinguished from assault here because drive-by shooting "does not criminalize conduct that causes bodily injury or fear of such injury."[3] Majority at 8. However this difference is illusory, as the victims of a drive-by shooting will certainly either be injured or fear an injury from the gunshot. The legislature apparently understands the similarity of the charges because it codified drive-by shooting under the assault chapter of the Revised Code of Washington, chapter 9A.36 RCW. Furthermore, the actions taken by Bowman and Nav if done on foot would constitute second degree assault. There is simply no material difference justifying the disparate treatment of drive-by shooting and assault as a predicate felony.
¶ 31 I see no reason to retreat from the well-reasoned principles enunciated in Andress. Drive-by shooting, like assault, is a felony leading directly to death. Allowing drive-by shooting to serve as a predicate to felony murder will punish a defendant for murder without proving any intent to kill. There is no principled reason to refuse to apply the reasoning in Andress to find drive-by shooting cannot act as the predicate felony for second degree felony murder.
¶ 32 I dissent.
WE CONCUR: Justice MARY E. FAIRHURST.
NOTES
[1] In 1997 the legislature substituted "drive-by shooting" for "reckless endangerment in the first degree." Laws of 1997, ch. 338, § 44. Because first degree reckless endangerment and drive-by shooting are now legally the same crime, this opinion will only refer to the predicate crime at issue as "drive-by shooting."
[2] In Hinton, we held Andress applies retroactively to personal restraint petitioners convicted of second degree felony murder predicated on assault; we found second degree felony murder with assault as the predicate under former RCW 9A.32.050 is a nonexistent crime under Andress and that such a conviction is invalid on its face and therefore immune from RCW 10.73.090(1)'s time bar. In re Pers. Restraint of Hinton, 152 Wash.2d 853, 857-58, 100 P.3d 801 (2004).
[3] Mot. Opposing Pet. for Review at 3.
[1] We refer to the defendants' predicate crimes as "drive-by shooting." See majority at ___, 172 P.3d at 682 n. 1.
[2] The defendant need not target any specific individual or attempt to harm any specific individual. The defendant's actions must merely be reckless, and place an individual at risk, even unwittingly.
[3] In addition, the majority contends "[d]rive-by shooting does not require a victim" and "unlike in the case of assault, homicide can be committed without reckless discharge of a firearm." Majority at ___, 172 P.3d at 684-85. However, the person risking injury can very easily be termed a victim of the drive-by shooting. In addition, "it is possible to kill someone without committing an assault. For example, the death could result from criminal mistreatment." Reply Br. at 2 (Bowman).