IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76656-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CEPA, HAYDEN ADAM MARTIN | ) | |
| DOB: 07/11/1996, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 26, 2018 |

SCHINDLER, J. — Hayden Adam Martin Cepa discharged his AR-15 semi-automatic rifle in a residential Marysville neighborhood. Cepa appeals the jury conviction of drive-by shooting in violation of RCW 9A.36.045. Cepa asserts insufficient evidence supports the conviction. In a supplemental assignment of error, Cepa contends, and the State concedes, the $200 filing fee should be stricken. We affirm the conviction but remand to amend the judgment and sentence to strike the filing fee.

FACTS

In 2016, Carolyn Cepa and her nephew Hayden Adam Martin Cepa lived at 5406 129th Place Northeast in Marysville. In the early morning hours of April

22, 2016, Carolyn[1] and Cepa left the house in her white Chevrolet TrailBlazer to drive to Arlington. Cepa was intoxicated and sat in the passenger seat with his AR-15 semi-automatic rifle.

Arlington resident Rita Wilson "heard gunshots" at approximately 5:00 a.m. Another Arlington resident called 911 to report gunshots fired.

After leaving Arlington, Carolyn drove to a residential neighborhood in Marysville. Kitty Broughton-Polonis lives in the neighborhood at the corner of 140th Place Northeast and 53rd Drive Northeast. Broughton-Polonis "heard a loud bang" at around 5:20 a.m. and felt her "house vibrate[ ]." Broughton-Polonis' neighbor sent her a text message asking if she "was knocking on her door." Broughton-Polonis replied, " 'No. I heard a loud noise, and I think it was a gunshot.' "

Joshua Zitnik lived near Broughton-Polonis at 14021 54th Drive Northeast. Zitnik heard gunshots fired at 5:21 a.m. Zitnik looked at the video footage on his security camera surveillance system. The surveillance video showed a white SUV[2] driving west past his house with the headlights off and five muzzle flashes from a gun fired at an upward angle from the passenger window at Zitnik's house. Zitnik called 911.

Marysville Police Officer Scott Richey responded to the 911 call. Officer Richey watched Zitnik's surveillance video and identified the license plate number of the white SUV. The license plate number matched the white

---

[1] We refer to Carolyn Cepa by her first name for purposes of clarity.
[2] Sport utility vehicle.

Chevrolet TrailBlazer registered to Carolyn Cepa at 5406 129th Place Northeast in Marysville.

A judge issued a search warrant. Detective Craig Bartl stopped Carolyn in her white TrailBlazer as she was driving away from her house. Carolyn told Detective Bartl that her nephew Hayden Cepa was inside the house. The police detained Cepa. Cepa smelled of "intoxicants."

Detective Bartl audio recorded the interview with Cepa. In the interview, Cepa told Detective Bartl he did not know why he and Carolyn left the house that morning and he did not know where they were going. Cepa said he brought the AR-15 with him "to shoot it." He "figure[ed] we would be [in a] rural area." Cepa said he loaded the gun when he "got to where we went, and I got out and shot." When asked how many rounds of ammunition he fired, Cepa responded, "I couldn't tell you like I said. All I know it was thirty" rounds in the magazine when he left the house. Cepa said he told Carolyn to "stop real quick" and then "[b]am . . . bam . . . bam . . . bam . . . bam . . . bam, shot my gun like a fucking idiot and now I'm sitting here."

Cepa told Detective Bartle, "I believe I stepped out" of the SUV but "I may have shot . . . I may have fired from the vehicle." Cepa said the "two times" he shot, he "believe[d]" he "opened the door, and stepped out and shot. . . . Bam . . . Bam . . . Bam . . . Bam . . . Bam, fast as I can. Semi-automatic trying to be you know . . . dick measuring contest whatever you want to call it, I guess."

Cepa denied shooting his gun in a residential neighborhood "near houses." Cepa said, "Not residential . . . no. . . . Not that I saw. Whenever I fire

3

a firearm I try to make sure I do not see a . . . house within distance." Cepa told Detective Bartl he thought he was shooting on a "main road." Cepa said he could not remember shooting the second time and the car "should not have been" moving when he shot the AR-15.

Detective Bartl told Cepa, "So we have surveillance video from a neighbor showing [Carolyn's] car with the license plate on it . . . [d]riving down the street, and shots are coming out of the passenger window." Detective Bartl asked, "[W]ould that be you." Cepa said, "That would be yes." Cepa said, "If the second time if I'm on camera . . . that I don't remember no, . . . but if I'm on camera I can't deny it." The police arrested Cepa and seized his AR-15 rifle.

The State charged Cepa with two counts of drive-by shooting in violation of RCW 9A.36.045. Cepa pleaded not guilty. The State called a number of witnesses to testify, including Kitty Broughton-Polonis, Joshua Zitnik, Detective Bartl, and Washington State Patrol Crime Laboratory forensic scientist and firearm expert Brian Smelser. Zitnik testified that he owned an AR-15 rifle and he "recognize[d]" the sounds of the gunshots as those of an AR-15 rifle. Detective Bartl testified he found four used shell casings in the street and one shell casing in the driveway in front of Zitnik's neighbor's house at 5411 140th Place Northeast. Detective Bartl testified the officers did not search for bullets and no one reported finding any bullets. Forensic scientist Smelser testified that the shell casings Detective Bartl found in the street were from Cepa's AR-15. Smelser testified bullets fired from an AR-15 travel about 3,000 feet per second, or "three times faster than most pistol rounds."

The court admitted into evidence the surveillance video from Zitnik's security system and the audio recording of Detective Bartl's interview with Cepa. The State played the surveillance video and the audio recording for the jury. The court also admitted into evidence aerial photographs of Zitnik's house, the residential neighborhood, and the surrounding area.

The court instructed the jury on the elements of the crime of drive-by shooting and the lesser included crime of unlawful discharge of a firearm. The jury convicted Cepa of drive-by shooting for recklessly discharging the AR-15 in the residential Marysville neighborhood and the lesser included crime of unlawful discharge of a firearm for the shots fired in Arlington. Cepa appeals the jury conviction for drive-by shooting only.

## ANALYSIS

Cepa argues insufficient evidence supports the jury finding him guilty of drive-by shooting under RCW 9A.36.045

Under both the federal and the state constitution, due process requires the State to prove every element of the crime charged beyond a reasonable doubt. U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3; In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

Sufficiency of the evidence is a question of constitutional law that we review de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Evidence is sufficient to support a conviction if any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. State v. Johnson, 188 Wn.2d 742, 750-51, 399 P.3d 507 (2017). A challenge to

the sufficiency of the evidence admits the truth of the State's evidence. State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). In determining sufficiency, circumstantial evidence is no less reliable than direct evidence. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on "issues of witness credibility." Witherspoon, 180 Wn.2d at 883.

RCW 9A.36.045 defines the crime of drive-by shooting. RCW 9A.36.045(1) states:

> A person is guilty of drive-by shooting when he or she recklessly discharges a firearm as defined in RCW 9.41.010 in a manner which creates a substantial risk of death or serious physical injury to another person and the discharge is from a motor vehicle or from the immediate area of a motor vehicle that was used to transport the shooter or the firearm, or both, to the scene of the discharge.[3]

RCW 9A.08.010(c) defines "recklessness" as follows:

> A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and his or her disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation.

Cepa claims there is insufficient evidence to show a substantial risk of death or serious physical injury to another person. In the alternative, Cepa argues sufficient evidence does not support the conviction for drive-by shooting of "another person" because an "actual, specific person" was not "put at risk." Neither case law nor the undisputed record support Cepa's arguments.

---

[3] Emphasis added.

6

In In re Personal Restraint of Bowman, 162 Wn.2d 325, 332, 172 P.3d 681 (2007), the Washington Supreme Court held that the drive-by shooting statute criminalizes reckless conduct that is inherently dangerous and creates the risk of causing death. The court held the statute does not require proof of a specific victim. Bowman, 162 Wn.2d at 332.

> [T]he drive-by shooting statute does not criminalize conduct that causes bodily injury or fear of such injury. Rather, the statute criminalizes specific reckless conduct that is inherently dangerous and creates the risk of causing injury or death. . . . Drive-by shooting does not require a victim; it requires only that reckless conduct creates a risk that a person might be injured.

Bowman, 162 Wn.2d at 332.[4]

Viewing the evidence in the light most favorable to the State, the evidence establishes Cepa recklessly discharged his AR-15 rifle in a residential, suburban neighborhood. The surveillance video shows Cepa firing his AR-15 semi-automatic rifle at a 45-degree angle toward Zitnik's house from the passenger window. Exhibit 79 shows aerial images of Zitnik's neighborhood and multiple houses in Cepa's line of fire. The unrebutted evidence established the bullet casings found near Zitnik's house matched the AR-15 and a bullet from an AR-15 travels at about 3,000 feet per second. Substantial evidence supports the jury finding Cepa recklessly fired his AR-15 semi-automatic rifle, creating the risk of causing a substantial risk of death or serious physical injury.

Cepa filed a supplemental assignment of error. Cepa argues the $200 filing fee should be stricken. The legislature amended the legal financial obligation statutes in 2018. RCW 36.18.020(2)(h) states, "[A]n adult defendant in

---

[4] Emphasis in original.

a criminal case shall be liable for a fee of two hundred dollars, except this fee shall not be imposed on a defendant who is indigent as defined in RCW 10.101.010(3)(a) through (c)." LAWS OF 2018, ch. 269, § 17. Because Cepa was indigent at the time of sentencing, the State concedes under State v. Ramirez, ___ Wn.2d ___, 426 P.3d 714, 721-22 (2018), and the 2018 amendment that the court must strike the filing fee.

We affirm the jury conviction for drive-by shooting in violation of RCW 9A.36.045 but remand to amend the judgment and sentence to strike the filing fee.

WE CONCUR: