IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of: | ) | No. 80806-1 |
| | ) | |
| ISAAC L. ZAMORA, | ) | DIVISION ONE |
| | ) | |
| Petitioner. | ) | PUBLISHED OPINION |
| | ) | |

ANDRUS, A. C. J. – In 2008, Isaac Zamora stole a number of weapons, killed six people, and attempted to kill six more. Zamora subsequently pleaded guilty to eighteen crimes, including four aggravated first-degree murder charges. He pleaded not guilty by reason of insanity to another two aggravated first-degree murder charges. In exchange for these pleas, the State agreed not to seek the death penalty and the court sentenced Zamora to life in prison without the possibility of parole on the four aggravated first-degree murder charges.

In 2018, the Washington State Supreme Court invalidated the state's death penalty in State v. Gregory.[1] In 2019, Zamora filed a motion to withdraw his guilty pleas, arguing he would not have accepted the plea deal had he known he would not be at risk of execution. The trial court transferred that motion to this court to be reviewed as a personal restraint petition. We dismiss Zamora's petition as time-barred under RCW 10.73.090(1).

_____

[1] 192 Wn.2d 1, 427 P.3d 621 (2018)

<u>FACTS</u>

This court previously described Zamora's crimes:

> On September 2, 2008, Isaac L. Zamora stole a large knife, rifle, handgun, and ammunition. Zamora shot and killed Chester Rose and Skagit County Sheriff Deputy Anne Jackson. Zamora then shot and killed two construction workers and stole a pickup truck. Zamora drove to a nearby house, crashed into the garage, and shot at property owner Fred Binschus as he ran away. When Julie Binschus arrived home, Zamora shot and killed her.
>
> After Zamora left the Binschus property, he "rammed" into a vehicle and tried to shoot the driver but the gun malfunctioned. Before driving away, Zamora stabbed the man twice in the chest. On the way to Interstate-5 (I-5), Zamora shot a man riding a motorcycle in the arm.
>
> While driving on I-5, Zamora shot at a car. The bullet passed through the front windows but did not hit the driver or passenger. Zamora then shot through the window of a second vehicle, killing the driver. As Zamora continued to drive south on I-5, he shot at an unmarked Washington State Patrol vehicle. The bullet hit the trooper in the forearm.

<u>Dep't of Soc. & Health Servs. v. Zamora</u>, 198 Wn. App. 44, 51-52, 392 P.3d 1124 (2017).

On September 29, 2008, the State charged Zamora with six counts of aggravated murder in the first degree, six counts of attempted murder in the first degree, three counts of burglary in the first degree, one count each of residential burglary and robbery in the first degree, two counts of theft of a firearm, and one count of unlawful possession of a firearm in the second degree.

Zamora was eligible for the death penalty for the aggravated murders under RCW 10.95.040. Under that provision, the State had thirty days in which to file a "notice of special sentencing" to indicate whether, after reviewing mitigating circumstances, it intended to seek the death penalty. RCW 10.95.040(2). The trial court extended the statutory deadline for filing this notice on several occasions

because Zamora underwent a competency evaluation at Western State Hospital (WSH) and was deemed incompetent to stand trial, and later, after competency restoration, Zamora and his counsel needed more time to prepare a mitigation package for the State.

On October 19, 2009 the defense provided the State a 155-page mitigation report. The prosecutors then "extensively discussed the contents of that report" and "conducted [their] own follow up regarding the defendant's mental status."

On November 9, 2009, defense counsel met with the prosecutor to discuss the case, shortly after which Zamora offered to plead guilty to some of the murder charges and to plead not guilty by reason of insanity to others. Before the State received this plea offer, it had not decided whether it would in fact pursue the death penalty. The State agreed to Zamora's offer and agreed not to seek the death penalty "[i]n recognition of the defendant's acceptance of culpability by entry of the pleas of guilty in conjunction with those factors considered in the mitigation package and the opinions of the mental health experts who examined the defendant."

On November 17, 2009, the trial court accepted Zamora's guilty pleas to all charges except two counts of aggravated first-degree murder, to which he pleaded not guilty by reason of insanity. On November 30, 2009, Zamora was sentenced to life without the possibility of release on the four aggravated murder counts, and received high-range sentences on the remaining fourteen counts. Pursuant to his acquittals by reason of insanity, Zamora was committed to the custody of the Department of Social and Health Services (DSHS) and transferred to WSH.

On October 18, 2018, the Supreme Court held the death penalty was unconstitutional under Washington's state constitution. State v. Gregory, 192 Wn.2d 1, 427 P.3d 621 (2018). On April 15, 2019, Zamora filed a hand-written motion to withdraw his guilty pleas, stating that he had changed his mind about the pleas due, in part, to the unconstitutionality of the death penalty. The court appointed counsel, who subsequently filed a motion to withdraw the guilty pleas under CrR 7.8(b)(1), (3), and (5). In his motion, Zamora asserted that he only accepted the plea bargain out of fear of the death penalty, which violated the due process clause of the Fourteenth Amendment to the federal constitution and article I, section 3 of the Washington State Constitution. He further contended the threat of the death penalty impermissibly deterred him from exercising his right to a trial guaranteed by the Sixth Amendment to the federal constitution and article I, section 21 of the Washington State Constitution.

The trial court concluded Zamora had not made a substantial showing he was entitled to relief and transferred the motion to this court to be considered as a personal restraint petition, pursuant to CrR 7.8(c)(2).

ANALYSIS

Zamora contends that his personal restraint petition, although filed more than ten years after entry of final judgment, is timely under RCW 10.73.100(6). We disagree.

As a general rule, a defendant may not collaterally attack a judgment more than one year after the judgment becomes final. RCW 10.73.090(1). This one-year time limit does not apply where:

> There has been a significant change in the law, whether substantive or procedural, which is material to the conviction, sentence, or other order entered in a criminal or civil proceeding instituted by the state or local government, and either the legislature has expressly provided that the change in the law is to be applied retroactively, or a court, in interpreting a change in the law that lacks express legislative intent regarding retroactive application, determines that sufficient reasons exist to require retroactive application of the changed legal standard.

RCW 10.73.100(6). To fall within the scope of this statutory exception to the time-bar, a defendant must demonstrate (1) a significant change in the law; (2) material to his conviction or sentence; (3) which applies retroactively. The parties do not dispute that Gregory was a significant change in the law or that it applies retroactively. The only question before us is whether Gregory was material to Zamora's conviction or sentence.

Whether a change in the law is material "depends upon the facts and circumstances of each case." In re Pers. Restraint of Hartzell, 108 Wn. App. 934, 940, 33 P.3d 1096 (2001). Zamora contends that the invalidation of the death penalty is material to his conviction and sentence because avoiding the death penalty was the "controlling consideration" in his decision to plead guilty to the aggravated first degree murder charges. The State disputes this assertion, arguing that Zamora had alternative motivations for his pleas. But in focusing on Zamora's motivation for pleading guilty, both the State and Zamora misunderstand the concept of materiality in RCW 10.73.100(6). Zamora's argument is predicated on the notion that the availability of the death penalty was material to him in making the decision to plead guilty. But the case law demonstrates that the controlling consideration is how the change in law impacts the authority of the courts to convict

a defendant of a particular crime or to impose a particular sentence. The relevant inquiry in assessing the materiality of a change in the law is not whether a particular legal issue was important to Zamora or motivated him into accepting the plea deal, but whether the change in the law, had it occurred before Zamora's plea, would have altered the crimes of which he was convicted or the sentences he received.

Several decisions illustrate this concept of materiality. In some cases, courts have deemed a change in law to be material, for example, when the change affected the legal elements of the crime of conviction. In In re Pers. Restraint of Andress, 147 Wn.2d 602, 610, 56 P.3d 981 (2002), our Supreme Court concluded that assault could not serve as the predicate felony for felony murder. In Bowman v. State, 162 Wn.2d 325, 172 P.3d 681 (2007), the defendants contended Andress was a significant change in the law material to their convictions. The court disagreed because the defendants were convicted of felony murder with the predicate crime of drive-by shooting, not assault. 162 Wn.2d at 327. Andress was deemed immaterial to the defendants' conviction because that case did not affect the law applicable to these defendants. Bowman, 162 Wn.2d at 328. Andress did not affect the substantive law for the crimes of conviction and was therefore not material.

As in Bowman, the Supreme Court's ruling in Gregory did not change the elements of aggravated first degree murder or any of the other crimes to which Zamora pleaded guilty. Nor did it alter any existing defenses or create any new defenses to aggravated first degree murder. The Gregory decision did not impact the substantive law of the crimes with which Zamora was charged or convicted.

In other cases, courts have held that a change in law may be material if it impacts the State's burden of proof at trial. For example, in State v. W.R., 181 Wn.2d 757, 770, 336 P.3d 1134 (2014), the Supreme Court held that instructing the jury that a defendant bears the burden of establishing a rape victim's consent was error. In In re Pers. Restraint of Colbert, 186 Wn.2d 614, 617, 380 P.3d 504 (2016), the court deemed this change in the law to be material to Colbert's conviction because the jury at his trial was instructed that he had the burden of proving consent as a defense to a second degree rape charge [2] W.R. directly impacted the relevant burden of proof instruction in Colbert's trial and was thus material to his conviction.

Zamora's case is distinguishable from Colbert because Gregory did not alter any applicable burdens of proof for any of the charges against him. The State's burden of proving the elements of aggravated first degree murder remains untouched following Gregory.

Finally, our Supreme Court recently held that a change in law may be material if it affects the sentence a trial court actually imposed. In In re Pers. Restraint of Domingo-Cornelio, No. 97205-2,[3] the court determined that its decision in State v. Houston-Sconiers, 188 Wn.2d 1, 391 P.3d 409 (2017) represented a significant change in the law in the sentencing of minors and the change was material to the defendant's sentence.[4] Under Houston-Sconiers, the

---

[2] The petition in that case was deemed time-barred because the court concluded the change in law lacked retroactive application. 186 Wn.2d at 617.

[3] Slip op. at http://www.courts.wa.gov/opinions/ pdf/972052.PDF (Sept. 17, 2020)

[4] See also In re Pers. Restraint of Ali, No. 95578-6, slip op. at http://www.courts.wa.gov/opinions/pdf/955786.PDF (Sept. 17, 2020)

court is required by the Eighth Amendment to the U.S. Constitution to consider the mitigating circumstances of youth when sentencing juveniles adjudicated as adults and must have absolute discretion to impose anything less than a standard adult sentence based on that youth. 188 Wn.2d at 19, 21. In Domingo-Cornelio, the defendant committed several crimes between the ages of 15 and 17 but, because of delayed reporting, was not sentenced until he was 20 years old. Slip op. at 2. The sentencing court did not indicate on the record whether it had considered the defendant's youth at the time he committed his crimes but imposed a standard range adult sentence. Slip op. at 4, 7.

The Domingo-Cornelio court deemed Houston-Sconiers to be material to this sentence because the change in the law affected all "adult standard range sentences imposed for crimes the defendant committed as a child." Slip Op. at 8. It reasoned that before Houston-Sconiers, the defendant could not have argued that the court was required to consider his youth at sentencing or that it had to consider whether his youth justified any exceptional sentence downward. Slip Op. at 8-9. Materiality in this context turned on whether the sentence could have been different had the decision issued before sentencing.

Zamora cannot argue that Gregory, had it issued before he was sentenced, could have led the trial court to impose a different sentence. The State did not seek, and the trial court did not consider imposing, a death sentence. At sentencing, Zamora could not have argued that Gregory impacted how the trial court should evaluate the appropriate sentence or limited the sentencing

alternatives available to the court. Gregory was therefore not material to Zamora's sentence under RCW 10.73.100(6).

Zamora relies on In re Pers. Restraint of Moore, 116 Wn.2d 30, 803 P.2d 300 (1991) to support the proposition that Gregory changed the sentencing law for aggravated first degree murder. Reliance on Moore, however, is misplaced. In that case, the defendant pleaded guilty and was sentenced to life without the possibility of parole, which our Supreme Court subsequently deemed impermissible under the then-existing statutory scheme. Moore, 116 Wn.2d at 31-32, 36. The court later granted Moore's personal restraint petition because the sentence he received was not authorized by the statute in effect when he was sentenced. The court deemed this defect, although not constitutional in nature, a fundamental defect and concluded the failure to correct it "could result in a denial of petitioner's due process rights." Moore, 116 Wn.2d at 33.

Moore is distinguishable from Zamora's case. First, the Moore court did not address whether the petition was time-barred under RCW 10.73.100(6), probably because it was timely under RCW 10.73.100(5) which provides an exception to the one-year limit when a sentence is imposed "in excess of the court's jurisdiction."

Second, Moore actually received an impermissible sentence under State v. Martin, 94 Wn.2d 1, 614 P.2d 164 (1980). Because Moore pleaded guilty, rather than go to trial, the court's sentence exceeded what was permitted by statute at the time he was sentenced. Zamora, by contrast, did not receive an unlawful sentence. Zamora's sentence – life without the possibility of release – did not

violate the law at the time he received that sentence, nor does it violate the law today.

Because <u>Gregory</u> did not change the substantive law relating to the crime of aggravated murder, did not alter the burden of proof in proving that crime, did not impact the defenses available to Zamora, or change the sentencing laws as to the sentence actually imposed on Zamora, <u>Gregory</u> is not material to Zamora's conviction or sentence.  Had the <u>Gregory</u> decision issued before Zamora pleaded guilty or was sentenced, Zamora still faced six counts of aggravated first degree murder and sentences of life without the possibility of parole.

We conclude that Zamora's petition is time-barred and it is hereby dismissed.

_Andrus, A.C.J._

WE CONCUR:

_Brunmor, J_          _Chun, J._